UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**BAIS YAAKOV OF SPRING VALLEY,** on behalf of
itself and all others similarly situated**,**

               Plaintiff,

    -vs.-

**ALLOY, INC. and CHANNEL ONE, LLC,**

               Defendants.

**12 CV 0581 (CS)(GAY)**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR CLASS CERTIFICATION AND FOR A STAY OF THE MOTION FOR CLASS
CERTIFICATION**

BELLIN & ASSOCIATES LLC
By: Aytan Y. Bellin, Esq.  ct28454
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
aytan.bellin@bellinlaw.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION...…………………………………………………………………1

STATEMENT OF FACTS...………………………………………………………4

POINT

THE CLASSES SATISFY ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION BUT BECAUSE MORE EVIDENCE MAY BE NEEDED TO SATISFY ONE OR MORE OF THE CLASS REQUIREMENTS THE COURT SHOULD STAY THIS MOTION PENDING DISCOVERY…………………………6

    A.    Rule 23(a)(1) – Numerosity…………………………………………………7

    B.    Rule 23(a)(2) – Commonality – and
        Rule 23(b)(3) – Common Questions of Law or Fact Predominate………………8

    C.    Rule 23(a)(3) – Typicality……………………………………………………15

    D.    Rule 23(a)(4) – Adequacy of Plaintiff as Class Representative...………………17

    E.    Rule 23(b)(3) – Class Action is Superior to Other Available Methods of
        Resolving this Controversy……………………………………………………18

    F.    Rule 23(g) – The Attorneys Seeking to Represent the Classes Satisfy the
        Requirements of Rule 23(g)...…………………………………………………21

CONCLUSION...………………………………………………………………22

## INTRODUCTION

Plaintiff Bais Yaakov of Spring Valley ("Bais Yaakov" or "Plaintiff") brought this action against Defendants Alloy, Inc. and Channel One, LLC ("Defendants") for Defendants' violations the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act ("JFPA"), 47 U.S.C. 227 (2005), the regulations implementing the TCPA promulgated by the Federal Communications Commission ("FCC") and New York General Business Law ("GBL") § 396-aa.  In short, from January 24, 2008 through January 24, 2012, Defendants sent more than ten-thousand unsolicited and solicited fax advertisements to Plaintiff and to thousands of other persons across the country, including to persons in New York state.  *See* Complaint ¶¶ 12-23. By doing so, Defendants violated the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act ("JFPA"), 47 U.S.C. 227 (2005), the regulations implementing the TCPA promulgated by the Federal Communications Commission ("FCC") and GBL § 396-aa.

Because Plaintiff filed the Complaint in this case on January 24, 2012 and the Complaint has yet to be served, no discovery has yet taken place.

Notwithstanding the lack of discovery, Plaintiff is making a class certification motion at this time out of an abundance of caution.  While four federal Courts of Appeals have ruled that even after a Defendant's offer of complete relief to a Plaintiff in a purported class action, the case will not be considered moot and the Plaintiff may still move for class certification, as long as the Plaintiff does so without undue delay, *see Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-1092 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239. 1249-1350 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-921 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3rd Cir. 2004), the Second Circuit has never ruled

on this issue.  However, the Seventh Circuit has recently ruled the opposite. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 894-897 (7th Cir. 2011).

Nevertheless, the Seventh Circuit has also ruled that if a plaintiff files a motion for class certification before a defendant makes an offer of complete relief, the case is not moot.  *Id.* at 896-897.  The Seventh Circuit went on to hold that "[i]f the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation."  *Id.* at 896.  *See, e.g., Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2nd Cir. 1978) ("[A trial] court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues. . . . Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held."); *Daniels v. Amerco*, 1982 WL 1856, *1 (S.D.N.Y. 1982)(staying ruling on pending class certification motion because the parties needed discovery to develop a full record upon which the court could make class certification ruling); 3 Newberg on Class Actions § 7:16 (4th Ed.) ("Apart from the disposition of various motions, class rulings are often deferred pending certain events such as discovery on class issues. . . ."). Accordingly, although the lack of discovery at this early point in this case may very well may have prevented Plaintiff from yet being able to develop the facts needed for class certification, Plaintiff is filing the instant motion for class certification to avoid any potential mootness issues and respectfully request this Court to stay this motion and delay its ruling until Plaintiff has had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

The Classes that Plaintiff wish to represent are as follows:

**Class A:**  All persons from January 24, 2008 through January 24. 2012, from four years prior to the date of the filing of the instant Complaint through the date of the filing of the instant Complaint to whom Defendants sent or caused to be sent an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes (as defined in the Complaint)

**Class B:**  All persons from January 24, 2008 through January 24, 2012 to whom Defendants sent or caused to be sent a facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes (as defined in the Complaint).

**Class C:**  All persons in New York state from January 24, 2009 through January 24, 2012, to whom Defendants sent or caused to be sent an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes.

*See* Compl. ¶¶ 39-40.

## STATEMENT OF FACTS

Plaintiff is a New York religious corporation with its principal place of business at 11 Smolley Drive, Monsey, New York 10952.  Declaration of David Sussman ("Sussman Decl."), attached to Notice of Motion filed herewith as Exhibit A, ¶¶ 1-2.  Complaint ("Compl.") ¶ 8. Plaintiff has telephone service at that location, where Plaintiff receives facsimile transmissions (hereinafter "faxes").  Sussman Decl. ¶ 2; Compl. ¶ 11.

On or about February 16, 2011, January 12, 2011, 2011, October 11, 2010, October 5, 2010, May 13, 2010, March 1, 2010, February 16, 2010, November 10, 2009, October 28, 2009, October 20, 2009, July 13, 2009, June 16, 2009, May 5, 2009, March 25, 2009, February 11, 2009, July 16, 2009, April 30, 2008, February 19, 2008 and on other dates from January 24, 2008 through January 24, 2012, Defendants, without Plaintiff's express invitation or permission, arranged for and/or caused a telephone facsimile machine, computer, or other device to send an unsolicited fax advertisement, advertising the commercial availability or quality of any property, goods, or services, to Plaintiff's fax machine located at its principal place of business in Monsey, New York.  Sussman Decl. ¶ 3.  Compl. ¶¶ 12, 13; Compl. Exhibit ("Ex.") A.  The fax advertisements advertised Defendants' internet television services.  Compl. Ex. A.  Defendants either negligently or willfully and/or knowingly arranged for and/or caused the above-listed fax advertisements attached as Exhibit A and  additional fax advertisements to be sent to Plaintiff's fax machine.  Compl. ¶ 20.

Eight (8) of the fax advertisements attached to the Complaint as Exhibit A do not contain any purported opt-out notice whatsoever (the "Group 1 Faxes").  Compl. ¶ 14; Ex. A.  The purported opt-out notice on the bottom of ten (10) of the fax advertisements attached to the Complaint as Exhibit A state: "TO OPT OUT OF FUTURE OF FUTURE OFFERS, SIMPLY

WRITE 'REMOVE' AND RETURN THIS PAGE BY FAX TO 770.613.0222 OR CALL ME TOLL FREE AT 1.888.467.3784.  THANK YOU!".  Compl. ¶ 15, Ex. A.   These fax advertisements are hereinafter referred to as the Group 2 Faxes.

Defendants have, from January 24, 2008 through January 24, 2012, either negligently or willfully and/or knowingly sent and/or arranged to be sent thousands of unsolicited fax advertisements, advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons all over the United States, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes.  Compl. 22

In addition, Defendants have, from January 24, 2008 through January 24, 2012, either negligently or willfully and/or knowingly sent and/or arranged to be sent thousands of unsolicited fax advertisements, advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons all over the United States, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes.  Compl. 22.

Finally, Defendants have, from January 24, 2009 through January 24, 2012 either negligently or willfully and/or knowingly sent and/or arranged to be sent thousands of unsolicited fax advertisements, advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers belonging to thousands of persons in New York state, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out

notice that is contained on the Group 2 Faxes.  Compl. 23

## POINT

**THE CLASSES SATISFY ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION BUT BECAUSE MORE EVIDENCE MAY BE NEEDED TO SATISFY ONE OR MORE OF THE CLASS REQUIREMENTS THE COURT SHOULD STAY THIS MOTION PENDING DISCOVERY**

The proposed Classes should be certified because they meet the requirements of numerosity, commonality, typicality, and adequacy, and because the common questions predominate over any individual questions and a class action is superior to other methods to adjudicate the controversy.[1]  Nevertheless because more evidence may be needed to satisfy one or more the class requirements, Plaintiff requests that this Court stay this motion for class certification and delay its ruling until after the Plaintiff has had an opportunity to conduct discovery and to amend this motion.

Class actions are essential to enforce laws protecting consumers.  As one Illinois appellate court has observed:

> In a large and impersonal society, class actions are often the last barricade of consumer protection….To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action-private suits or governmental actions-have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.[2]

---

[1] Fed. R. Civ. P. 23(a) and (b)(3).

[2] *Eshaghi v. Hanley Dawson Cadillac Co*, 214 Ill.App.3d 995, 1004, 574 N.E.2d 760, 766 (1st Dist. 1991).

In determining whether a class action will be allowed, the Court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing.[3]   Finally, the class action determination is to be made at an early practicable time.[4]   As demonstrated below, each of the requirements for class certification is met or will be met after discovery in this case has taken place.

### A.  Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[5]   "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient."[6]   It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class."[7]   The court may "make common sense assumptions in order to find support for numerosity."[8]   "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or

---

[3] *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); *accord*, *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D.Ill. 1977).

[4] Fed.R.Civ.P. 23(c)(1)(A).

[5] Fed.R.Civ.P. 23(a)(1).

[6] *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D.Ill. 2002).

[7] *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).

[8] *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983).

common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."[9]

In the instant case, a number of factors suggest that the classes in this case meet the numerosity requirement of Rule 23.  First, the faxes attached as Exhibit A to the Complaint (the "Junk Faxes") indicate that Defendants have approximately 8,000 schools as subscribers and that its programming reaches 250,000 teachers.  Compl. Ex. A.  This supports the notion that Defendants are national companies with clients throughout the United States and that Defendants' advertising is national in scope and likely involves the sending of numerous fax advertisements.  In addition because the purpose of advertising by fax is to inexpensively reach many people at once, Plaintiff reasonably believes that Defendants' sent the Junk Faxes to at least hundreds if not thousands of people throughout the United States, including New York.  Certainly, it is reasonable to infer that Defendants sent more than 40 copies of the Junk fax to persons in the United States.

Similarly, Plaintiff believes that Defendants have sent thousands of similar unsolicited and solicited fax advertisements to thousands of people during the over four year period covered by the Complaint, although Plaintiff needs discovery to obtain concrete evidence of these numbers.  Accordingly, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until Plaintiff has had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

**B.  Rule 23(a)(2) – Commonality – and**
     **Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

---

[9] 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

Rules 23(a)(2) requires that the court determine whether there are questions of law or fact common to the class.   Rule 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation.[10]   Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.[11]   The "common questions" may be the existence and legality of a standard business practice.[12]   Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met."[13]

In the instant case, there are questions of law and fact common to Class A that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendants' conduct of sending and/or causing to be sent to Plaintiff and the members of Class A fax advertisements without Plaintiff's and members of class A's express invitation or permission, which advertised the commercial availability or quality of any property, goods, or services and which either contained no purported opt out

---

[10] *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).

[11] *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990).

[12] *Haywood v. Superior Bank*, 244 Ill. App.3d 326, 614 N.E.2d 461, 464 (1st Dist. 1993); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 774 (N.D. Ill. 1989).

[13] *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice to that contained on the Group 2 Faxes, by facsimile, computer or other device violated 47 U.S.C. § 227(b) and/or the regulations thereunder;

(b) Whether Defendants' conduct of sending and/or causing to be sent to Plaintiff and the members of Class A unsolicited fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice to that contained on the Group 2 Faxes, by facsimile, computer or other device, was knowing or willful;

(c) Whether Plaintiff and the members of Class A are entitled to statutory damages, triple damages and costs for Defendants' acts and conduct; and

(d) Whether Plaintiff and members of Class A are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

There are questions of law and fact common to Class B that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendants' conduct of sending and/or causing to be sent to Plaintiff and the members of Class B fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes, by facsimile, computer or other device violated 47 U.S.C. § 227(b);

(b) Whether Defendants' conduct of sending and/or causing to be sent to Plaintiff and the members of Class B fax advertisements, which advertised the commercial availability or quality of any property, goods, or services and which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes, by facsimile, computer or other device, was knowing or willful;

(c) Whether Plaintiff and the members of Class B are entitled to statutory damages, triple damages and costs for Defendants' acts and conduct; and

(d) Whether Plaintiff and members of Class B are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

There are questions of law and fact common to Class C that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendants' conduct of sending and/or causing to be sent to Plaintiff and the members of Class C fax advertisements without Plaintiff's and members of Class C's express invitation or permission, which advertised the commercial availability or quality of any property, goods, or services and which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice to that contained on the Group 2 Faxes, by facsimile, computer or other device violated GBL § 396-aa(2); and

(b) Whether Plaintiff and the members of Class C are entitled to statutory damages for Defendants' acts and conduct.

Defendants will undoubtedly claim that the Court will have to engage in an individualized inquiry as to whether each class member in Classes A and B had an existing business relationship with Defendants or Classes A and C had provided express invitation or permission to Defendants authorizing the transmission of facsimile advertisements. However, numerous courts have held that the defense of prior express invitation or permission, i.e., consent, is either insufficient to defeat class certification, s*ee*, *e.g.*, *CE Design v. Beaty Const., Inc.*, 2009 WL 192481 *8-*9 (N.D. Ill. 2009)(citing cases); *Display South, Inc. v. Graphics House Sports Promotion, Inc.*, 992 So.2d 510, 520-521 (La. App. 1 Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847, 855 (Okla. Ct. App. Oct. 31, 2006), or that common proof applicable to the class developed during class discovery can defeat such a defense. *See, e.g., Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642, 647 (W.D. Wash. 2007); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 327-328 (5th Cir. 2008); *Blitz v. Agean, Inc.*, 677 S.E.2d 1, 9-10 (N.C. App. 2009). Thus, as discussed above, this Court should stay this Motion until after Plaintiff has had sufficient time to pursue Class discovery. At this stage of the litigation, prior to class discovery, Classes A and C, that have as an element that the Defendants sent them unsolicited fax advertisements, are clearly viable. [14]

The existing business relationship defense is also irrelevant to Class A because the lack of the required opt-out notice described in 47 U.S.C. § 227(b)(2)(D) in the unsolicited fax

---

[14] Even if there were no common proof regarding the defense of consent "this [would] not compel a finding that individual issues predominate over common ones" for Classes A and C. *Brown v. Kelly*, 609 F.3d 467, 483 (2nd Cir. 2010) (internal quotations marks and brackets omitted). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Id.* (internal quotation marks omitted). Thus, at this juncture, before Plaintiff have had any opportunity to take class discovery it would be improper to deny class certification of classes A and C even if there was no common proof regarding absence of consent; Discovery may very well uncover additional common questions, besides the ones listed in the FAC, that predominate over the individual defense of consent. *See id.* at 484-485.

advertisements sent to Class A forecloses the Defendants from utilizing the existing business relationship defense.  *See* 47 U.S.C. § 227(b)(1)(C)(i), (b)(1)(C)(iii); *Talty v. Strada Capital Corp.*, 2009 WL 3328042 (Ohio C.P. 2009) (unsolicited fax advertisements without opt-out notice as required by 47 U.S.C. § 227(b)(2)(D) actionable under the TCPA under 47 U.S.C. § 227(b)(3)); *G.M. Sign, Inc. v 400 Freight Services, Inc.*, 2010 TCPA Rep. 1934 at 2 (Ill. Cir. 2010)(attached to the Notice of Motion filed herewith as hereto as Exhibit C); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 at 1-2 (Mass. Super. July 3, 2009)(defense of prior existing business relationship are inapplicable when the faxes at issue do not contain the opt-out notice required by  § 227(b)(2)(D))( attached to the Notice of Motion filed herewith as hereto as Exhibit D); *Tryon v. Nationwide Chem. Corp.*, 2007 WL 4965139 (Ohio C.P. 2007) (same).[15]

Moreover, the defenses of explicit invitation or permission, i.e., consent, and existing business relationship are simply not applicable to class B, that complains of receiving fax advertisements that do not contain the opt out notice described in 47 C.F.R. § 64.1200(a)(3)(iii). Solicited fax advertisements sent on or after that date that do not contain the opt-out notice described in 47 C.F.R. § 64.1200(a)(3)(iii) violate 47 C.F.R. § 64.1200(a)(3)(iv), and that violation is actionable pursuant to 47 U.S.C. § 227(b)(3). *See* 47 U.S.C. § 227(b)(3)(A)(a private right of action may be brought for, among other things, "a violation . . . of the regulations prescribed under [47 U.S.C. § 227(b)]"); *Mims v. Arrow Financial Services*, ___ U.S. ___, 2012 WL 125429, *3 (2012)(recognizing that Congress explicitly authorized a private right of action for violations of the regulations promulgated by the FCC pursuant to the TCPA); *Ketch, Inc.* v. *Heubel Material Handling Inc.,* 2011 WL 1807329, *1 (W.D. Okla. May 6, 2011)(fax advertisements are actionable under the TCPA, whether or not solicited, if the fax advertisements

---

[15] TCPA Reports is a topical reporter available free to judges and their clerks at www.tcpalaw.com.

13

do not contain the opt-out notice required by the 47 U.S.C. § 227(b) and the regulations promulgated thereunder); *Medical West Ballas Pharmacy, Ltd v. Anda, Inc*., 2011 WL 1481007 (Mo. Cir. April 11, 2011)(same); *MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*, 2008 WL 6970582 (Mo. Cir. 2008)(failure by the defendant to include opt-out notice required by 47 C.F.R. §§ 64.1200(a)(3)(iii) on fax advertisement sent to a person who had previously consented to receiving fax advertisements from the defendant, was actionable under the TCPA under 47 C.F.R. § 64.1200(a)(3)(iv) and 47 U.S.C. § 227(b)(3)); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 at 1-2 (Mass. Super. July 3, 2009)(defenses of consent and prior existing business relationship are inapplicable when the faxes at issue do not contain the opt-out notices of required by 47 C.F.R. § 64.1200(a)(3)(iii)).

Moreover, as noted above, unsolicited fax advertisements sent on or after August 1, 2006 that do not contain the opt-out notice described in 47 C.F.R. § 64.1200(a)(3)(iii) violate 47 C.F.R. § 64.1200(a)(3) because they are unsolicited and the existing business relationship defense does not apply to them. They are therefore also actionable under 47 U.S.C. § 227(b)(3). *See* 47 C.F.R. 64.1200(a)(3), (a)(3)(i), (a)(3)(ii), (a)(3)(ii). Accordingly, whether the faxes at issue are solicited or unsolicited makes no difference to Class B. In both cases, faxes that do not contain the opt-out notice described in 47 C.F.R. § 64.1200(a)(3)(iii) violate the TCPA. *See*, *e.g.*, *Collins*, 2009 TCPA Rep. 1936 at 1-2.

Finally, under GBL § 396-aa, all unsolicited faxes, whether or not the sender and recipient had a prior business relationship, must contain a notice to the recipient that informs the recipient that the recipient can prevent the transmission of future unsolicited facsimile advertisements by "clear[ly] indicat[ng] to the sender by "any verbal, written or electronic means" that the recipient does not want to receive fax advertisements from the sender. GBL §

14

396-aa(1)(stating that " it shall be unlawful to initiate any telefacsimile message to a recipient who has previously clearly indicated to the initiator by any verbal, written or electronic means that the recipient does not want to receive telefacsimile messages from the initiator."); GBL §§ 396-aa(2)("Every unsolicited telefacsimile message sent to a recipient shall contain a notice that informs the recipient of the ability, granted by subdivision one of this section, to prevent the transmission of future unsolicited telefacsimile messages.").  Accordingly, the existing business relationship defense is not applicable to Plaintiff's and Class C's claims under GBL § 396-aa(3) for Defendants' violations of GBL § 396-aa(2).

Even if the defense of existing business relationship did apply to classes A, B and C, which it does not, that defense could be defeated through "common proof" uncovered during class discovery. *Gene & Gene*, 541 F3d at 327-328.  *See Kavu*, 246 F.R.D. at 647; *Blitz*, 677 S.E.2d at 9-10.

Because more evidence of commonalty and/or that common questions of law or fact predominate may be required to satisfy Rule 23, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until Plaintiff has had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

## C.  Rule 23(a)(3) – Typicality

Rule 23 requires that the claims of the named Plaintiff to be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there

> are factual distinctions between the claims of the named Plaintiff and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.[16]

This inquiry "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as claims of the class at large."[17]

Here, typicality is inherent in the Class A's definition. By definition, each of Class A's members has been subjected to the same practice as the named Plaintiff, namely, they are each persons to whom Defendants sent or caused to be sent, without the members of Class A's express permission or invitation, at least one fax advertisement, advertising the commercial availability or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes.

Similarly, typicality is inherent in the Class B's definition. By definition, each of Class B's members has been subjected to the same practice as the named Plaintiff, namely, they are each persons to whom Defendants sent or caused to be sent at least one fax advertisement, advertising the commercial availability or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes.

Finally typicality is inherent in Class C's definition. By definition, each of Class C's members has been subjected to the same practice as the named Plaintiff, namely they are each persons to whom Defendants sent or caused to be sent, without the members of Class C's express permission or invitation, at least one fax advertisement, advertising the commercial availability

---

[16] *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

[17] *Retired Chi. Police Ass'n*, 7 F.3d at 597.

or quality of any property, goods, or services, which either contained no purported opt out notice whatsoever or contained a purported opt-out notice identical or substantially similar to the purported opt-out notice that is contained on the Group 2 Faxes, in New York state.

Nevertheless, because more evidence of typicality may be required to satisfy Rule 23, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until Plaintiff has had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

### D. Rule 23(a)(4) – Adequacy of Plaintiff as Class Representative

The adequacy of a proposed class plaintiff's representation of a class involves two factors: (a) whether the proposed representative is credible and has an adequate knowledge of and activity in the case;[18] and (b) the plaintiff must not have interests antagonistic to those of the class.[19]

At this juncture, it is clear that Plaintiff is credible and has an adequate knowledge of and activity in this case.  Sussman Decl. ¶ 4; Declaration of Aytan Y. Bellin in Support of the Motion for Class Certification attached to the Notice of Motion field herewith as Exhibit B ("Bellin Decl.") ¶ 7.  Plaintiff sought out legal representation and obtained experienced counsel in this matter and have been actively involved in discussing the facts underlying this case with

---

[18] See *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp.2d 602, 626-27 (S.D.N.Y. 2010) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).

[19] *Andrews v. Bechtel Power Corp.*, 785 F.2d 124, 130 (1st Cir. 1985); Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).  *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'") (*quoting Guarantee Ins. Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D. Ill. 1972)).  Furthermore, such conflict must be real and not speculative.  *Robertson v. National Basketball Association*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975).

counsel and in reviewing the Complaint.   Plaintiff has provided counsel with materials supporting Plaintiff's claims and have discussed strategy with counsel concerning this case. Sussman Decl. ¶ 4; Bellin Decl. ¶ 7.

Moreover, Plaintiff's interests are not in any way antagonistic to or in conflict with those of the Classes' members.   Plaintiff's declaration indicates that Plaintiff has no known conflicts with any of the class members and have no ownership interests in Defendants.   Sussman Decl. ¶ 5.   Given the identical claims of Plaintiff and the members of the Classes, Plaintiff's interests and those of the Classes are one and the same.   In sum, Plaintiff is an adequate class representatives.

Because more evidence of Plaintiff's adequacy as Class Plaintiff may be required to satisfy Rule 23, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until Plaintiff has had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

### E.      Rule 23(b)(3) – Class Action is Superior to Other Available Methods of Resolving this Controversy

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability or concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because, generally, class members are unaware of their rights and have damages

such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."[20]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .[21]

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; *see, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the Plaintiff to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.[22]

Because Plaintiff knows of no class members who have brought similar claims, and none have been filed with this Court, the second and third factors do not come into play.  But if the

---

[20] *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

[21] *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

[22] *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

recipients of Defendants' fax advertisements realize that they have claims against Defendant, the result would be a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."[23]  By contrast, it would be more desirable to have all of the claims concentrated in a single forum.[24]

The final factor in considering predominance and superiority is whether there would be difficulty managing the class.[25]  Though the Classes appear to number in the tens of thousands, Plaintiff's attorney's experience in suits of this kind speaks to their ability to manage the Classes. *See infra*.  To the extent that this is considered a management difficulty, "[i]t should be kept in mind that management difficulties, like other superiority factors, must be judged in comparison to the fairness and efficiency of other available methods for adjudicating the controversy. Because [ascertainment of class members is] unique to class actions, any management difficulties in connection with class notice must be viewed not in isolation, but rather from the perspective of whether such [superiority problems] negate the advantages of unitary adjudication from a class action."[26]

The only real alternative to a class action in this case is for there to be no adjudication of these claims whatsoever.  It is not only the superior means of adjudication, but practically, it is the only means.

Because more evidence of superiority may be required to satisfy Rule 23, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until Plaintiff has had sufficient time for necessary discovery and can amend this

---

[23] *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969).

[24] Rule 23(b)(3)(C).

[25] Rule 23(b)(3)(D).

[26] 2  H. Newberg, *Newberg on Class Actions* ( 4th Ed. 2002), § 4:35 (discussing difficulties in notifying the class members as a potential management difficulty).

motion using the additional information uncovered in discovery.

F. **Rule 23(g) – The Attorneys Seeking to Represent the Classes Satisfy the Requirements of Rule 23(g)**

If the Court certifies the proposed classes, the Court must also appoint counsel pursuant to Rule 23(g)(l). In pertinent part, the rule requires consideration of (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)

In this case, Attorney Bellin has discussed the case with Plaintiff, has researched possible claims by Plaintiff and the Classes, has drafted the Complaint and has drafted the instant motion for class certification and for a stay of this motion. Bellin Decl. ¶ 7-8. Accordingly, Attorney Bellin plainly satisfies Rule 23(G)(1)(A)(i).

Moreover, through the above-described actions, Attorney Bellin has already made commitment of substantial resources and time to this case since its inception, thus satisfying the requirements of Rule 23(G)(1)(A)(iv).

In addition, Attorney Bellin has considerable experience in complex litigation and in representing parties in TCPA class actions in federal courts. Bellin Decl. ¶¶ 4-6. Moreover, attorney Bellin does not have any interests which might cause him not to vigorously pursue this action. Bellin Decl. ¶ 8. Accordingly, Attorney Bellin satisfies the requirements of Rule 23(g)(l)(A)(ii) and (A)(iii), in that he has the ability to prosecute a class action and has a grasp of the applicable law.

Finally, because there is a general presumption of competence for all members of the bar

in good standing unless evidence to the contrary is adduced,[27] it is plain that Attorney Bellin is more than adequate to be class counsel in this case.   Accordingly, Attorney Bellin merits the Court's appointment as class counsel in this matter.

Because more evidence of adequacy of Attorney Bellin may be required to satisfy Rule 23, Plaintiff respectfully requests that this Court stay this motion for class certification and delay its ruling on this motion until the case has had time to move forward and Plaintiff has had an opportunity to amend this motion with new information.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this action be certified as a class action under Rule 23 using the class definitions proposed above, that Aytan Y. Bellin of Bellin & Associates LLC be appointed as counsel for the Classes, and that Plaintiff be appointed as the representatives of the Classes.   Nevertheless, the lack of discovery at this early point in this case may very well have prevented Plaintiff from yet being able to develop the facts needed for class certification.   As noted above, Plaintiff is filing the instant motion for class certification to avoid any potential mootness issues.   Accordingly, Plaintiff respectfully requests this Court to stay this motion for class certification and delay its ruling on this motion until Plaintiff have had sufficient time for necessary discovery and can amend this motion using the additional information uncovered in discovery.

Dated: White Plains, New York
　　　　January 27, 2012

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　BELLIN & ASSOCIATES LLC

---

[27] *Hertz v. Canrad Precision Industries, Inc.*, No. 69 CIV 174, 1970 U.S. Dist. LEXIS 13024, *3 (S.D.N.Y. 1970); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr. E.D.N.Y. 1986).

/s/Aytan Y. Bellin
By: Aytan Y. Bellin, Esq. ct28454
Attorneys for Plaintiff and the
    Proposed Classes
85 Miles Avenue
White Plains, New York 10606
Tel: (914) 358-5345
Email: aytan.bellin@bellinlaw.com