UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**BAIS YAKOVOF SPRING VALLEY,** on behalf of
itself and all others similarly situated**,**

                Plaintiff,

     -vs.-

**ALLOY, INC. and CHANNEL ONE, LLC,**

               Defendants.

**12 CV 581 (CS)(GAY)**

**PLAINTIFF'S REVISED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE AND DISMISS**

BELLIN & ASSOCIATES LLC
One of Plaintiff's Attorneys
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
aytan.bellin@bellinlaw.com

Aytan Y. Bellin, Esq.
     *of Counsel*

TABLE OF CONTENTS

Page

Table of Authorities……………………………………………...........................iv

PRELIMINARY STATEMENT…....……………………………………………1

POINT I

FED. R. CIV. P. 23 RATHER THAN ANY STATE LAW OR STATE RULE OF COURT GOVERNS CLASS CERTIFICATION DETERMINATIONS OF PRIVATE TCPA CAUSES OF ACTION IN FEDERAL COURT………………………1

    A.    The Supreme Court's Decision in *Mims v. Arrow Financial Services,* LLC, 132 S. Ct. 740 (2012), and Its Progeny, Make Clear that Fed. R. Civ. P. 23, Rather than Any State Law or State Court Rule, Governs Class Certification Determinations of Private TCPA Actions Brought in Federal Court..………………………………………..1

    B.    Because the Federal Rules of Civil Procedure Govern When Cases are Brought in Federal Court and the "May, if otherwise" Phrase Does not Explicitly or Implicitly Repeal Fed. R. Civ. P. 23 or the Rules Enabling Act (28 U.S.C. 2072), Fed, R. Civ. P. 23, Rather than Any State Law or State Court Rule, Governs Class Certification Determinations of Private TCPA Actions Brought in Federal Court……………………..……………………………….7

POINT II

ALL OF THE TCPA CLAIMS IN THE COMPLAINT ARE TIMELY BECAUSE THEY ALL FALL WITHIN THE TCPA'S FOUR YEAR STAUTE OF LIMITATIONS AS PROVIDED BY 28 U.S.C. § 1658……………………………10

POINT III

THE FAXES DEFENDANTS SENT TO PLAINTIFF, WHICH ARE ATTACHED TO THE COMPLAINT AS EXHIBIT A, ARE ADVERTISEMENTS WITHIN THE MEANING OF THE TCPA..…………….…………………………………………12

POINT IV

THE FAXES ATTACHED TO THE COMPLAINT, WHETHER SOLICTED OR UNSOLICITED ARE ACTIONABLE UNDER THE TCPA BECAUSE THEY EITHER CONTAIN NO OPT-OUT NOTICE WHATSOEVER OR CONTAIN

AN OPT-OUT NOTICE THAT DOES NOT CONTAIN ALL THE INFORMATION REQUIRED BY THE TCPA AND THE REGULATIONS PROMULGATED THEREUNDER…………………………………………………..18

    **A.**    There is a Private Cause of Action Under the TCPA Against Persons Who Send or Cause to Be Sent Fax Advertisements that Do Not Contain the Opt-Out Notice Required by the TCPA and the Regulations Promulgated Thereunder……………………19

    B.    Because the Group 1 Faxes Contain No Opt-Out Notice And the Opt-Out Notices on the Group 2 Faxes Do Not Contain All of Information Required Under the TCPA and the Regulations Promulgated Thereunder, Defendants Are Liable Under the TCPA……………………………………………………………….………22

POINT V

CORPORATIONS, SUCH AS PLAINTIFF, MAY BRING CAUSES OF ACTION UNDER GBL § 396-aa……………………………………………………..26

POINT VI

CLASS ACTIONS FOR VIOLATIONS OF GBL § 396-aa MAY BE BROUGHT IN FEDERAL COURT……………………………………………………………..28

POINT VII

THE FAXES AT ISSUE "PROMOT[ED] GOOD OR SERVICES FOR PURCHASE WITHIN THE MEANING OF GBL § 396-aa……………………………31

POINT VIII

ALL OF THE GBL § 396-aa CLAIMS IN THE COMPLAINT ARE TIMELY BECAUSE THEY ARE ALL WITHIN N.Y. CPLR § 214(2)'s THREE YEAR STATUTE OF LIMITATIONS...……………………………………………………..33

POINT IX

ALL OF FAXES ATTACHED TO THE COMPLAINT FAIL TO SATISFY THE OPT-OUT NOTICE REQUIREMENTS OF GBL § 396-aa…...………………………..34

CONCLUSION………………………………………………………………………..35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bailey v. Domino's Pizza, LLC*,
    2012 WL 1150882 (E.D. La. 2012) ....................................................................3, 4, 11

*Banca Commerciale Italiana v. Northern Trust Intern. Banking Corp.*,
    160 F.3d 90 (2nd Cir. 1998) ......................................................................................33

*Branch v. Smith*,
    538 U.S. 254 (2003) ....................................................................................................8

*Broader v. MBNA Corp.*,
    281 A.D.2d 369 (App. Div. 2001) .............................................................................29

*C.E. Design, Ltd. v. Prism Business Media, Inc.*,
    606 F.3d 443 (7th Cir. 2010) .....................................................................................16

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)................................................................................................5, 29

*Cammarano v. United States*,
    258 U.S. 498 (1959) ...................................................................................................23

*Charvat v. Crawford*,
    799 N.E.2d 661 (Ohio App. 2003)............................................................................14

*City of New York v. Maul*,
    14 N.Y.3d 499 (2010) ................................................................................................29

*City of New York v. Smokes Sprit.com, Inc.*,
    12 N.Y.23d 616 (2009) ..............................................................................................26

*Clowes v. Pulver*,
    258 A.D.2d 50 (App. Div. 1999) ...............................................................................33

*Collins v. Locks & Keys of Woburn, Inc.*,
    2009 TCPA Rep. 1936 (Mass. Super. 2009) ......................................................19, 20

*Desantis v. Computer Credit, Inc.*,
    269 F.3d 159 (2nd Cir. 2001)......................................................................................23

*Dickerson v. New Banner Institute, Inc.*,
    460 U.S. 103 (1983)......................................................................................................5

*Douglaston Civic Ass'n v. Galvin*,
    36 N.Y.2d 1 (1974) ........................................................................26

*FCC v. ITT World Communications, Inc.*,
    466 U.S. 463 (1984) .....................................................................16

*Friedman v. Heckler*,
    765 F.2d 383 (2nd Cir. 1985) ......................................................16

*G.M. Sign, Inc. v 400 Freight Services, Inc.*,
    2010 TCPA Rep. 1934 (Ill. Cir. 2010)........................................19

*G.M. Sign, Inc. v. MFG.com. Inc.*,
    2009 WL 1137751 (N.D. Ill. 2009) .............................................16

*G-I Holdings v. Barron & Budd*,
    2003 WL 193502 (S.D.N.Y. 2003)...............................................20

*Gaidon v. Guardian Life Ins. Co. of America*,
    96 N.Y.2d. 201 (2001) .................................................................33

*Giovanniello v. ALM Media*,
    LLC, 660 F.3d 587 (2nd Cir. 2011) ....................................3, 4, 11

*Gomez v. Campbell-Ewald Co.*,
    805 F. Supp.2d 923 (C.D. Cal. 2011) ...........................................6

*Gottlieb v. Carnival Corp.*,
    436 F.3d 335 (2nd Cir. 2006) ........................................................9

*Gottlieb v. Carnival Corp.*,
    635 F. Supp.2d 213 (E.D.N.Y. 2009) .........................................16

*Greater Buffalo Press, Inc. v. Harris Corp.*,
    1987 WL 18693 (W.D.N.Y. 1987) ...............................................26

*Green v. Anthony Clark Int'l Ins. Brokers, Ltd*,
    2009 WL 2515594 (N.D. Ill. 2009) .............................................16

*Hagan v. Rogers*,
    570 F.3d 146 (3rd Cir. 2009) ........................................................8

*Harbeck v. Pupin*,
    123 N.Y. 115 (1890) ..............................................................27, 32

*Hartnett v. New York City Transit Auth.*,
    86 N.Y.2d 438 (1995) .................................................................34

*Hawk Valley, Inc. v. Taylor*,
  2012 WL 1079965 (E.D. Pa. 2012) ...................................................................3, 4, 11

*Holmes v. Back Doctors. Ltd*,
  2009 WL 3425961 (S.D. Ill. 2009) ..................................................................16

*Holster v. Gatco*,
  618 F.3d 214 (2nd Cir. 2010), *cert. denied*, 131 S. Ct. 2151 (2011) ...................3, 4

*Holster v. Gatco, Inc.*
  130 S. Ct 1535 (2010)(Scalia, J. concurring)..........................................................8

*Huff v. Dobbins*,
  182 F.3d 922, 1999 WL 370036 (7th Cir. 1999) ...................................................23

*In the Matter of the Junk Fax Prevention Act of 2005*,
  ___ FCCR___, 2012 WL 1548554 (May 2, 2012) .......................................20, 21

*In the Matter of Response Card Marketing, Inc.*,
  ___ FCCR ___, 2012 WL 1225062 (April 10, 2012) ............................................23

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991*,
  21 F.C.C.R. 3787 (April 6, 2006) ........................................................13, 14, 15, 18

*In re Sombroto*,
  50 A.D.3d 63 (App. Div. 2008) ........................................................................27

*Indiana Bell Tel. Co. v. McCarty*,
  362 F.3d 378 (7th Cir. 2004) ..........................................................................21, 23

*Jones v. R.R. Donnelley & Sons Co.*,
  541 U.S. 369 (2004)..........................................................................................10

*Ketch, Inc.* v. *Heubel Material Handling Inc.*,
  2011 WL 1807329 (W.D. Okla. 2011) ...............................................................20

*Landsman & Funk, P.C. v. Lorman Business Center, Inc.*,
  2009 WL 602019 (W.D. Wis. 2009)...................................................................24

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3rd Cir.), *portion of opinion reinstated en banc*.............................6, 10

*Leckler v. Cashcall, Inc.*
  2008 WL 5000528 (N.D. Cal. 2008) ..................................................................16

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004)..............................................................................................23

*Margulis v. P & M Consulting, Inc.*,
  121 S.W.3d 246 (Mo. App. 2003) .................................................................14

*Matter of New York State Assn. of Plumbing-Heating- Cooling Contrs. v. Eagan*,
  65 N.Y.2d 793 (1985) .................................................................................33

*Medical West Ballas Pharmacy, Ltd v. Anda, Inc.*,
  2011 WL 1481007 (Mo. Cir. 2011) ...............................................................20

*Miller v. Painter's Supply Co.*,
  2011 WL 3557018 (Ohio App. 2011) .............................................................21

***Mims v. Arrow Financial Services, LLC***
  132 S. Ct. 740 (2012) .......................................................................... passim

*Mississippi Band of Choctaw Indians v. Holyfield*,
  490 U.S. 30 (1989) ......................................................................................5

*Mourning v. Family Publ'n Serv., Inc.*,
  411 U.S. 356 (1973) ..................................................................................15

*MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*,
  2008 WL 6970582 (Mo. Cir. 2008) ...............................................................20

*Nack v. Walburg*,
  2011 WL 310429 (E.D. Mo. 2011) ................................................................21

*National Ass'n of Home Builders v. Defenders of Wildlife*,
  551 U.S. 644 (2007) .............................................................................8, 9, 11

*New York State Psychiatric Association v. New York State Department of Health*,
  19 N.Y.3d 17 (2012) .......................................................................27, 28, 32

*NLRB v. Natural Gas Utility Dist.*,
  402 U.S. 600 (1971) ....................................................................................5

*Phillips Randolph Enters, LLC v. Adler-Weiner Research Chicago, Inc.*,
  526 F. Supp.2d 851 (N.D. Ill. 2007) .............................................................17

*Ransom v. F.I.A. Card Servs., N.A.*,
  131S. Ct. 716 (2011) ...............................................................................7, 23

*Rosenblum v. New York State Workers Compensation Board*,
  309 A.D.2d 120 (App. Div. 2003) .................................................................30

*Rothman v. Gregor*,
  220 F.3d 81 (2nd Cir. 2000) .......................................................................20

*Sadowski v. ODC Biomedical, Inc.*,
  2008 WL 5089229 (N.D. Ill. 2008) ...................................................................17

*Sanders v. Winship*,
  57 N.Y.2d 391 (1982) .......................................................................................27

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010)..........................................................................6, 7, 30, 31

*Shenk v. Citibank/Citigroup/Citicorp.*,
  2010 WL 5094360 (S.D.N.Y. 2010)...................................................................20

*St. Louis Heart Center, Inc. v. Vein Centers for Excellence*,
  ___ F. Supp.2d ___, 2012 WL 87257 (E.D. Mo. 2012) ........................................6

*Stern v. Bluestone*,
  47 A.D.3d 576 (App. Div. 2008), *rev'd on other grounds*, 12 N.Y.3d 873 (2009)................11

*Super Glue Corp. v. Avis Rent A Car System, Inc.*,
  132 A.D2d 604 (App. Div. 1987) .......................................................................29

*Talk Am. Inc. v. Mich. Bell Tel. Co.*,
  131 S. Ct. 2254 (2011).......................................................................................20

*Talty v. Strada Capital Corp.*,
  2009 WL 3328042 (Ohio C.P. 2009)..................................................................19

*Tryon v. Nationwide Chem. Corp.*,
  2007 WL 4965139 (Ohio C.P. 2007)..................................................................19

*Uniformed Firefighters Association v. Beekman*,
  52 N.Y.2d 463 (1981) ...................................................................................27, 32

*United States v. Joly*,
  493 F.2d 672 (2nd Cir. 1974)..............................................................................3

*United States v. O'Hagan*,
  521 U.S. 642 (1997)..........................................................................................16

*US Fax Law Center, Inc. v. iHIRE, Inc.*,
  476 F.3d 1112 (10th Cir. 2007) ........................................................................10

*Weinberger v. Salfi*,
  422 U.S. 749 (1975)..........................................................................................16

*White v. County of Rockland*,
  97 N.Y.2d 336 (2002) ...................................................................................27, 32

*Wojchowski v. Daines*,
    498 F.3d 99 (2nd Cir. 2007) .................................................................... 6

**STATUTES**

8 U.S.C. § 1251(e)(1)(B) ......................................................................... 7

28 U.S.C. § 1658 ..........................................................................10, 11, 12

20 U.S.C. § 2072 ..................................................................................... 7

28 U.S.C. § 2342(1) ............................................................................... 16

47 U.S.C. § 155(c)(1) ........................................................................21, 23

47 U.S.C. § 227 ..................................................................................... 21

47 U.S.C. § 227(b) ........................................................................19, 20, 21

47 U.S.C. § 227(b)(1)(C)(i) ..................................................................... 19

47 U.S.C. § 227(b)(1)(C)(ii) .................................................................... 19

47 U.S.C. § 227(b)(1)(C)(iii) ...............................................................19, 24

47 U.S.C. § 227(b)(2)(D) ...........................................................19, 22, 23, 25

47 U.S.C. § 227(b)(2)(D)(ii) .................................................................... 24

47 U.S.C. § 227(b)(2)(E) .................................................................22, 23, 25

47 U.S.C. § 227(b)(3) ..........................................................2, 3,19, 20, 21

47 U.S.C. § 227(b)(3)(A) ........................................................................ 20

47 U.S.C. § 227(d) ................................................................................ 21

McKinney's Statutes § 236 ...................................................................... 30

N.Y. CPLR § 213(1) .............................................................................. 34

N.Y. CPLR § 214(2) .........................................................................33, 34

N.Y. CPLR § 215(3) .........................................................................12, 34

N.Y. CPLR § 215(4) .........................................................................11, 33

N.Y. CPLR § 901 .................................................................................. 29

N.Y. CPLR § 901(b) .................................................................1, 2, 10, 29, 30

N.Y. Civil Rights Law § 51 ..................................................................................34

N.Y. Executive Law § 63(12) ..............................................................................30

N.Y. GBL § 23(9) ................................................................................................29

N.Y. GBL § 23(10) ..............................................................................................29

N.Y. GBL § 349(b) ..............................................................................................29

N.Y. GBL § 349(h) ..............................................................................................29

N.Y. GBL § 350-d ................................................................................................29

N.Y. GBL § 350-e ................................................................................................29

N.Y. GBL § 396-aa ........................................................................................ passim

N.Y. GBL § 396-aa(1) ..........................................................................26, 27, 34, 35

N.Y. GBL § 396-aa(2) ..................................................................................34, 35

N.Y. GBL § 396-aa(3) ..........................................................................26, 27, 28, 29

N.Y. GBL § 399-p(8) ...........................................................................................29

N.Y. GBL § 399-p(9) ...........................................................................................29

N.Y. GBL § 660(2) ..............................................................................................29

N.Y. GBL § 660(3) ..............................................................................................29

N.Y. General Construction Law § 37 ..............................................................26, 27

## OTHER AUTHORITIES

47 C.F.R. § 0.5(c) ...........................................................................................21, 23

47 C.F.R. § 0.111(a)(18) ......................................................................................23

47 C.F.R. § 0.141(a) ............................................................................................21

47 C.F.R. § 0.311 .................................................................................................23

47 C.F.R. § 0.361 .................................................................................................21

47 C.F.R. § 64.1200(a)(3) ....................................................................................19

47 C.F.R. § 64.1200(a)(3)(i) ...............................................................................19

47 C.F.R. § 64.1200(a)(3)(ii) ................................................................................19

47 C.F.R. § 64.1200(a)(3)(iii) .......................................................19, 22, 22, 23, 25

47 C.F.R. § 64.1200(a)(3)(iii)(B) ...................................................................24, 25

47 C.F.R. § 64.1200(a)(3)(iii)(C) ........................................................................24

47 C.F.R. § 64.1200(a)(3)(iv) .....................................................................19, 20, 21

47 C.F.R. § 64.1200(a)(3)(v) ........................................................................22, 23, 25

47 C.F.R. § 64.1200(a)(3)(vi) ...............................................................................25

47 C.F.R. § 64.1200(d) .........................................................................................21

Fed. R. Civ. P. 1 ..................................................................................................7

Fed. R. Civ. P. 20 ................................................................................................8

Fed. R. Civ. P. 23 ........................................................................................ passim

*Governor's Bill* Jacket, 1989 Chapter 597 ......................................................28

Max B. Sawicky & Alex Molinar, *The Hidden Costs of Channel One,* Educational
    Studies Policy Laboratory (1998) ................................................................13

Second Circuit Local Rule 32.1.1(a) ..................................................................3

Telephone Consumer Protection Act of 1991, Junk Fax Protection Act of 2005, 71 FR
    25967-01, 25,969 (May 3, 2006) ................................................................25

<u>PRELIMINARY STATEMENT</u>

Plaintiff  Bais Yaakov of Spring Valley ("Plaintiff") submits this memorandum of law in opposition to the motion of Alloy, Inc. and Channel One, LLC ("Defendants" ) to strike and to dismiss.  For the reasons that follow, Defendants' motion should be denied in its entirety.

POINT I

**FED. R. CIV. P. 23 RATHER THAN ANY STATE LAW OR STATE RULE OF COURT GOVERNS CLASS CERTIFICATION DETERMINATIONS OF PRIVATE TCPA CAUSES OF ACTION IN FEDERAL COURT.**

Defendants contend that because N.Y. CPLR § 901(b), which prohibits class actions in New York state courts for statutory damages, precludes private TCPA class actions in New York state courts, the instant class action in federal court is precluded as well.  As is discussed in detail below, Defendants are wrong.

A.  **The Supreme Court's Decision in** *Mims v. Arrow Financial Services,* **LLC, 132 S. Ct. 740 (2012), and Its Progeny, Make Clear that Fed. R. Civ. P. 23, Rather than Any State Law or State Court Rule, Governs Class Certification Determinations of Private TCPA Actions Brought in Federal Court.**

The Supreme Court in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012) explicitly held that state law does not apply to private TCPA actions brought in federal courts. *Id.* at 751.  The Court so held because it concluded that Congress intended the TCPA to contain "uniform, federal substantive proscriptions" that would be equally applicable throughout the country. *Id.*  The Supreme Court specifically stated that it was:

> "not persuaded [that in passing the TCPA] that Congress sought only to fill a gap in the States' enforcement capabilities. Had Congress so limited its sights, it could have passed a statute providing that out-of-state telemarketing calls directed into a State would be subject to the laws of the receiving State. *Congress did not enact such a law. Instead, it enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency. See 47 U.S.C. 227. TCPA liability thus depends on violation of a federal statutory requirement or an FCC regulation, §§ 227(b)(3)(A), (c)(5), not on a*

1

> *violation of any state substantive law.*

*Mims*, 132 S. Ct. at 751 (emphasis added). The Court also specifically eschewed the use of state laws or state rules of court in private TCPA causes of action in federal court stating that "Congress' design would be less well served if consumers had to rely on 'the laws or rules of court of a State,' § 227(b)(3), or the accident of diversity jurisdiction, to gain redress for TCPA violations." *Mims*, 132 S. Ct. at 751.

If that were not clear enough, the *Mims* Court ruled that the "may, if otherwise" phrase permits state courts to refuse to hear TCPA cases, *Mims*, at 751 & n.12, and then went on to state the following: "Were we to accept [the] positions that diversity and federal-question jurisdiction are unavailable, and that state courts may refuse to hear TCPA claims, residents of states that choose not to hear TCPA claims would have no forum in which to sue." *Mims*, 132 S. Ct. at 751 n.13. In other words, the Supreme Court clearly ruled that federal court jurisdiction over private TCPA causes of action permits those causes of action to proceed in federal court even when they would have been prohibited by state law or state rules of court from proceeding in state courts. Otherwise, the Court's statement that absent such federal jurisdiction, "residents of states that chose not to hear TCPA claims would have no forum in which to sue" would make no sense. *Id.* If state laws or state rules of court that prohibited private TCPA causes of action from proceeding in state courts applied in federal courts, then even with federal jurisdiction over private TCPA causes of action, such causes of action would not be able to proceed and plaintiffs would not be able sue in federal court. Thus, it is clear that the Supreme Court in *Mims* ruled that private TCPA causes of action brought in federal court are governed by federal law and not by any state law or state rules of court. Accordingly, Fed. R. Civ. P. 23 rather CPLR 901(b) applies to the instant case and therefore this case may move forward as a class action.

Furthermore, *Mims* makes clear that the TCPA phrase "may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" (the "may, if otherwise phrase") is "permissive" and bolstered that interpretation by pointing out that the may, if otherwise phrase does not include the words "only" or "exclusively."  *See Mims*, 132 S. Ct. at 745 (the may, if otherwise phrase is a "permissive grant of jurisdiction to state courts. . . ."); *id.* at 749 (the may, if otherwise phrase is "permissive language"); *id.* at 750 ("47 U.S.C. 227(b)(3) does not state that a private plaintiff may bring an action under the TCPA 'only' in state court, or 'exclusively' in state court.'").   Accordingly, *Mims* verifies that the may, if otherwise phrase does not require the application of state law or direct federal courts to defer to state law in deciding whether a class action can be maintained.  Conversely, *Mim*s' reasoning completely undermines the Second Circuit's holdings in *Giovanniello v. ALM Media,* LLC, 660 F.3d 587, 594 (2nd Cir. 2011) and *Holster v. Gatco*, 618 F.3d 214, 216, 217 (2nd Cir. 2010), *cert. denied*, 131 S. Ct. 2151 (2011), that the may, if otherwise phrase **mandates** that federal courts apply state law to private TCPA causes of action.  As is plain from *Mims*, there is nothing at all **mandatory** about the may, if otherwise phrase.[1]

Indeed, the two district courts to have reached the question of whether the reasoning of *Giovanniello* and *Holster* is good law in light of *Mims*, have ruled that that reasoning is not good law.  *See Hawk Valley, Inc. v. Taylor*, 2012 WL 1079965, *10, *12 (E.D. Pa. 2012); *Bailey v. Domino's Pizza, LLC*, 2012 WL 1150882, *3-*6 (E.D. La. 2012).   *Hawk* so ruled because

---

[1] On May 10, 2012, in a summary order that contained no reasoning, the Second Circuit denied *Giovanniello's* motion to recall the mandate, withdraw the Court's October 17, 2011 decision and render a new decision.  *See* May 10, 2012 Summary Order attached as Exhibit G to the Bellin Decl.  This order has no precedential value because under Second Circuit Local Rule 32.1.1(a), "[r]ulings by summary order do not have precedential effect."  Local Second Circuit Rule 32.1.1(a).  Moreover, the order has no persuasive value because it contains no reasoning and therefore "it is impossible to be sure of the basis of the [order]."  *United States v. Joly*, 493 F.2d 672, 676 & n.8 (2nd Cir. 1974).

*Giovanniello*'s and *Holster's* conclusion that state law controlled the ability of parties to bring TCPA cases in federal court was based on their erroneous holdings, **both explicitly rejected in *Mims*,** 132 S. Ct. at 751, that Congress "enacted the TCPA primarily to fill a perceived jurisdictional gap for states that choose to recognize a cause of action for unsolicited commercial faxes" (*Giovanniello*, 660 F.3d at 596)  and "that federal law (the TCPA) uses state law to define the federal cause of action." (*Holster*, 618 F.3d at 216).  *See Hawk*, 2012 WL 1079965, *10, *12.

*Bailey* rejected the reasoning of *Giovanniello* and *Holster* in light of *Mims* because the Second Circuit's holding that state law applied to private TCPA actions in federal courts was also based on the Second Circuit's erroneous conclusion, **rejected by *Mims*,** that federal courts lack federal question jurisdiction over such actions.  *Bailey*, 2012 WL 1150882, *5.  *Bailey* pointed out that the Second Circuit itself had conceded that if there were federal question jurisdiction over private TCPA causes of action in federal court, then federal law concerning class actions, *i.e.*, Fed. R. Civ. P. 23, rather than state law, might very well apply.  *See Bailey*, 2012 WL 1150882, *5 (*citing Bonime v. Avaya*, 547 F.3d 497, 503-504 (2nd Cir. 2008) (Calabresi, J. concurring)); *Giovanniello*, 660 F.3d at 595 n.7 (recognizing that that the reason that the Second Circuit does not follow the Seventh Circuit's holding that federal law applies to private TCPA causes of action in federal court is that "the Seventh Circuit, unlike [the Second Circuit,] recognizes federal question jurisdiction for TCPA actions and does not look to state law to determine which causes of action lie under that statute.").

Indeed, contrary to the Second Circuit's insistence that the may, if otherwise phrase means to divest federal court of federal question jurisdiction over private TCPA causes of action and requires the application of state law to private TCPA causes of action brought in federal Court, the Supreme Court in *Mims* provided two different reasons why Congress included the

4

may if otherwise phrase in the TCPA.  The first reason was "to avoid any argument that in private actions, as in actions brought by State Attorneys General, federal jurisdiction is exclusive."  *Mims*, 132 S. Ct at 750-751.  The second reason was to "g[i]ve States leeway they would otherwise lack to decide for themselves whether to entertain claims under the TCPA." *Id.* at 751 & n.12 (internal quotation marks and brackets omitted).  The Supreme Court's omission of Defendants' and the Second Circuit's suggested interpretation of the "may if otherwise phrase" — that state law applies to private TCPA actions in federal courts — is glaring.   The implication of that omission — that the Second Circuit's and Defendants' interpretation is incorrect — is obvious, especially in light of the remainder of the Mims opinion discussed above.

The correctness of this conclusion becomes even more apparent when one considers that "'in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law.'" *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989)(quoting *Jerome v. United States*, 318 U.S. 101, 104 (1943)); *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119 (1983)(same); *NLRB v. Natural Gas Utility Dist.*, 402 U.S. 600, 603-604 (1971)(same).  Just as the "may, if otherwise" phrase was insufficiently plain to in *Mims* to overcome the presumption that federal courts have federal question jurisdiction over all cases arising under federal law, *see* Mims, 132 S. Ct at 753, so too that phrase is insufficiently plain to overcome the presumption that the application of the TCPA in federal court is based on federal law and not state law.

Similarly, the "may, if otherwise" phrase is insufficiently plain to overcome the strong presumption that class relief is permissible in all civil actions brought in federal court.  *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)("[i]n the absence of a direct expression by

5

Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court."); *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1438 (2010).(same). Because the TCPA contains no "direct expression by Congress" precluding class treatment for private causes of action under the TCPA, it is clear that Congress intended class actions to be available for such private causes of action. *See, e.g., Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 94-95 (3rd Cir.)(noting that had Congress wanted to preclude TCPA class actions by private parties, it would have so provided), *portion of opinion reinstated en banc* by Order Dated April 17, 2012[2]; *St. Louis Heart Center, Inc. v. Vein Centers for Excellence*, ___ F. Supp.2d ___, 2012 WL 87257, *2 (E.D. Mo. 2012); *Gomez v. Campbell-Ewald Co.*, 805 F. Supp.2d 923, 931 (C.D. Cal. 2011).

Thus, given the Supreme Court's decision in *Mims*, the unanimous interpretation of *Mims* given by the *Hawk* and *Bailey* cases, the strong presumption that Congress does not make the application of a federal act dependent on state law, and the strong presumption that all civil actions brought in federal court may proceed as class actions, it is clear that Fed. R. Civ. P 23 rather than any state law or state rule of court governs class action determinations of private TCPA actions in federal court. Accordingly, because the contrary holdings of *Giovanniello* and *Holster* are inconsistent with the Supreme Court's holding in *Mims*, *Giovanniello* and *Holster* are no longer good law and may not be followed. *See, e.g., Wojchowski v. Daines*, 498 F.3d 99, 106 (2nd Cir. 2007)(affirming District Court's ruling that the Second Circuit's otherwise controlling decision could not be followed, as it was based on a statutory interpretation that was inconsistent with subsequent decision of the Supreme Court).

---

[2] A copy of the Third Circuit's Order dated April 17, 2012 is attached to the Declaration of Aytan Y. Bellin in Opposition to Defendants' Motion to Dismiss ("Bellin Decl.") as Exhibit D.

**B.      Because the Federal Rules of Civil Procedure Govern When Cases are Brought in Federal Court and the "may, if otherwise" Phrase Does not Explicitly or Implicitly Repeal Fed. R. Civ. P. 23 or the Rules Enabling Act (28 U.S.C. 2072), Fed, R. Civ. P. 23, Rather than Any State Law or State Court Rule, Governs Class Certification Determinations of Private TCPA Actions Brought in Federal Court**

It is axiomatic that when a civil action involving is pending in federal court, the Federal Rules of Civil Procedure govern.  *See* Fed. R. Civ. P. 1; *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1438 (2010).   And, the Supreme Court recently ruled in *Shady Grove* that federal courts must use Rule 23 rather than any contrary state law to determine whether cases may be brought as a class actions, even when the cases at issue are state-law cases.  *Shady Grove*, 131 S. Ct. at 1436-1442; *id.* at 1442 -1444 (plurality opinion); *id*. at 1455-1460 (Stevens, J. concurring in part and concurring in the judgment).  A fortiori, when a case involves a federal law, such as the TCPA, and is in federal court, the certifiability of the case as a class action must be determined using Rule 23.  *See id.*

Therefore, in order for the may, if otherwise phrase to be read as requiring the application of state law to class certification determinations of private TCPA actions brought in federal Court rather than Fed. R. Civ. P. 23, the may, if otherwise phrase must be read as either explicitly or implicitly repealing Fed. R. Civ. P. 23 or the Rules Enabling Act (20 U.S.C. § 2072).  The may, if otherwise phrase does neither.

While the Supreme Court recognized in *Shady Grove* that "Congress has carved out some federal claims from Rule 23's reach," the federal statute *Shady Grove* cited as an example of such a carve out — 8 U.S.C. § 1251(e)(1)(B) — is a statute that does so plainly and explicitly.  *See Shady Grove*, 131 S. Ct. at 1438; 8 U.S.C. § 1251(e)(1)(B).   Unlike 8 U.S.C. § 1251(e)(1)(B), the may, if otherwise phrase does not explicitly repeal Rule 23 or the Rules Enabling Act (28 U.S.C. § 2072) for private TCPA causes of action brought in federal courts, let

7

alone mention either of them.  *See Hagan v. Rogers*, 570 F.3d 146, 154 (3rd Cir. 2009)(the Prisoner Litigation Reform Act ("PLRA") did not explicitly repeal Fed. R. Civ. P. 20 because "[t]he PLRA did not alter the text of Rule 20, or make any reference to the Rule."); *Holster v. Gatco, Inc.* 130 S. Ct 1535, 1535 (2010)(Scalia, J. concurring)(implicitly finding no explicit repeal of Rule 23 or the Rules Enabling Act by the TCPA by only discussing whether there was an implied repeal).

The only other way the TCPA could be interpreted to render Rule 23 and the Rules Enabling Act as not applicable to private TCPA causes of action brought in Federal Court would be if the TCPA impliedly repealed Rule 23 and the Rules Enabling Act.  *See Holster* 130 S. Ct. at 1535 (Scalia, J. concurring); *Hagan*, 570 F.3d at 154.  However, it is well settled that "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest."  *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (internal quotation marks and brackets omitted). "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject area of the earlier one and is clearly intended as a substitute." *Branch v. Smith*, 538 U.S. 254, 273 (2003) (internal citations and quotation marks omitted).

Because the TCPA does not even address class certification, much less cover the whole subject area, the TCPA cannot be read as impliedly repealing Rule 23 and the Rules Enabling Act unless these provisions are in irreconcilable conflict.  In interpreting the later statute, here the TCPA, "'[a court] will not infer a statutory repeal unless . . . such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *National Ass'n of Home Builders*, 551 U.S. at 662 (internal quotation marks, brackets, and ellipses omitted)).  Under these well-established standards, it is clear that the there is no irreconcilable

conflict between the TCPA on the one hand and Rule 23 and the Rules Enabling Act on the other.  The plain language of the may, if otherwise phrase can be read in complete harmony with Rule 23 and the Rules Enabling Act.  *See id.*  That is because, as the Supreme Court has ruled, the phrase at issue was inserted by Congress for two reasons: (1) "to avoid any argument that in private actions, as in actions brought by State Attorneys General, federal jurisdiction is exclusive"; and (2) to "g[i]ve States leeway they would otherwise lack to decide for themselves whether to entertain claims under the TCPA."   *Mims*, 132 S. Ct at 750-751 & n.12.  There is nothing irreconcilable about either of these interpretations and the ability of private parties to bring TCPA class actions in federal courts pursuant to Rule 23 and the Rules Enabling Act. No implied repeal of Rule 23 and the Rules Enabling Act is necessary, let alone "absolutely necessary in order that the [phrase at issue] of the [TCPA] [] shall have any meaning at all." *National Ass'n of Home Builders*, 551 U.S. at 662 (internal quotation marks, brackets, and ellipses omitted)).

In fact, given the Supreme Court's holding in *Shady Grove* — that federal courts must use Rule 23 rather than any contrary state law to determine whether state-law cases may be brought as class actions — interpreting the TCPA to require the application of state law rather than Rule 23 to determine certification of private TCPA causes of action in federal courts, would lead to an anomalous result;  Class actions for state law claims based on unlawful faxes could be brought in a federal court even when a state's procedural laws prohibited such class actions, while class actions for federal TCPA claims based on those same faxes could not be heard in that same federal court because of the state's procedural law.  Accordingly, interpreting the TCPA to require the application of state law rather than Rule 23 to determine certification of private TCPA causes of action in federal courts would be improper. *Cf., e.g., Gottlieb v. Carnival Corp.*,

436 F.3d 335, 342 (2nd Cir. 2006)("[I]t would be odd to conclude that Congress intended th[e] [TCPA] to be treated differently, for purposes of diversity jurisdiction, from any other state statute."); *Landsman*, 640 F.3d at 88-89 (holding that there is diversity jurisdiction over TCPA claims because, among other thing, "interpreting the TCPA to vest exclusive jurisdiction in state courts would [create anomalous results, i.e.,] state law claims based on unlawful telephone calls could be brought in federal court, while federal TCPA claims based on those same calls could be heard only in state court." [internal quotation marks omitted]);*US Fax Law Center, Inc. v. iHIRE, Inc.*, 476 F.3d 1112, 1117 (10th Cir. 2007)(same).

In sum, federal courts must utilize to Rule 23 rather than CPLR § 901(b) in deciding whether to certify class actions under the TCPA.  The may, if otherwise phrase does not require or permit otherwise.

## POINT II

## ALL OF THE TCPA CLAIMS IN THE COMPLAINT ARE TIMELY BECAUSE THEY ALL FALL WITHIN THE TCPA'S FOUR YEAR STAUTE OF LIMITATIONS AS PROVIDED BY 28 U.S.C. § 1658

The TCPA, which is a federal statute enacted in 1991, does not contain a statute of limitations.  Accordingly, it is governed by the four-year federal catch-all statute of limitations provided under 28 U.S.C. § 1658 for federal statutes enacted after 1990.  *See generally Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 379-380 (2004)(discussing 28 U.S.C. § 1658).

Citing *Giovanniello v. ALM Media,* LLC, 660 F.3d 587, 593 (2nd Cir. 2011), Defendants contend that "the may, if otherwise phrase" in the TCPA requires this Court to follow state law statutes of limitations in TCPA actions rather than 28 U.S.C. § 1658.  However, for the reasons discussed in Point I(A) above, *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012) and its progeny make clear that federal law, which in this case is 28 U.S.C. § 1658, rather than

state law must be applied to private TCPA causes of action in federal Court.  *See, e.g.,* Point 1(A) above; *Hawk Valley, Inc. v. Taylor*, 2012 WL 1079965, *10, *12 (E.D. Pa. 2012)(holding that *Giovanniello* is no longer good law in light of *Mims* and that the statute of limitations in 28 U.S.C. § 1658 is the statute of limitations for private TCPA causes of action in federal court); *Bailey v. Domino's Pizza, LLC*, 2012 WL 1150882, *3-*6 (E.D. La. 2012)(same).  Moreover, for the reasons discussed in Point I(B) above, the may, of otherwise phrase, for which the Supreme Court in *Mims* provided two interpretations, neither of which had to do with applying state law to private TCPA actions in federal courts, can be read entirely consistently with 28 U.S.C. § 1658. Because it is not necessary, let alone absolutely necessary, to construe the may, if otherwise phrase as requiring the application of state statutes of limitation to private TCPA causes of action in federal court in order for the may, if otherwise phrase to have any meaning at all, it is apparent that the may, if otherwise phrase did not repeal the application of 28 U.S.C. § 1658 to private TCPA causes of action in federal Court.  *See, e.g., National Ass'n of Home Builders*, 551 U.S. at 662.

In any event, even if the TCPA required state statutes of limitations to be followed, New York courts have already ruled, as a matter of state law, that 28 U.S.C. § 1658 applies to TCPA actions.  *See Stern v. Bluestone*, 47 A.D.3d 576, 582 (App. Div. 2008), *rev'd on other grounds*, 12 N.Y.3d 873 (2009). In fact, *Giovanniello* itself recognized that ruling and that the Appellate Division so ruled because "the analogous state statute of limitations was uncertain." *Giovanniello*, 660 F.3d at 595 (citing *Bluestone*, 47 A.D.3d at 582).  Because the lack of an analogous state statute of limitations was central to the Appellate Division's ruling, as recognized by *Giovanniello*, the Appellate Division explicitly rejected the application of the statute of limitations contained in N.Y. CPLR § 215(4), urged by Defendants here, to TCPA

cases.  The same reasoning would mandate rejection of the statute of limitations contained in N.Y. CPLR § 215(3) to private TCPA causes of action in New York State courts.  In any event, although the application of state law to the instant TCPA case would require the use of the four year statute of limitations contained in 28 U.S.C. § 1658, as would federal law, as discussed above, state law does not apply to private TCPA actions in federal courts.

In sum, the proper statute of limitations to apply to the TCPA claims in this case is the four year statute of limitations contained in 28 U.S.C. § 1658.

**POINT III**

**THE FAXES DEFENDANTS SENT TO PLAINTIFF, WHICH ARE ATTACHED TO THE COMPLAINT AS EXHIBIT A, ARE ADVERTISEMENTS WITHIN THE MEANING OF THE TCPA**

The Complaint alleges that Defendants faxed to Plaintiff numerous advertisements about Defendants' goods and/or services, the Complaint has those fax advertisements attached as Exhibit A, and the Complaint incorporates those fax advertisements by reference.  Every single fax attached as part of Exhibit A specifically advertises Defendants' programming and video services to schools.[3]  Moreover, contrary to Defendants' contention, that includes those faxes that purport to invite Plaintiff to visit booths at various conventions to learn about Channel One's services.

Although Defendants claim that Channel One's services are free of charge, that is not the case.  Indeed, as some of the faxes attached as Exhibit A make clear, the use of Channel One's services is contingent on schools signing an agreement with Defendants consenting to "Terms and Conditions of Network Participation."   *See* Bellin Decl., Exhibit A at BY-000045, 47, 49, 53, 55, 62, 64, 66, 70, 73.  While schools do not make cash payments to Defendants for

---

[3] The Complaint and its attached Exhibits are attached as Exhibit A to the Declaration of Aytan Y. Bellin in Opposition to Defendants' Motion to Strike and to Dismiss ("Bellin Decl.").

Defendants' services, the schools provide other valuable consideration to Defendants upon which

Defendants rely to make enforceable the agreement they sign with the schools.  Among other

valuable consideration the schools provide for Defendants services is (1) guaranteed access to

the school itself; (2) guaranteed access to the school's students on 90% of school days; and (3)

guaranteed transmission of Defendants' two minutes of sponsored commercials, for every 10

minutes of news, to the school's students on 90% of school days.  *See* Bellin Decl., Exhibit A at

BY-000044-45, 47, 49, 52, 53, 54, 55, 58, 61-66, 71, 73.   Thus, even if Defendants'

interpretation of the term "commercial availability" in the TCPA were correct," i.e., made or

done primarily for sale or for profit," which Plaintiff by no means concedes, the Complaint

would clearly state a cause of action.[4]

      In any event, even if the faxes attached to the Complaint were offering free goods and/or

services, the faxes would still be considered advertisements under the TCPA.  That is because

the FCC has made clear that "facsimile messages that promote goods or services even at no cost,

such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited

advertisements under the TCPA's definition." *In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3814 ¶ 52

(April 6, 2006)(emphasis added).   The FCC explained the reason for this rule:

> In many instances, "free" seminars serve as a pretext to advertise commercial
> products and services. Similarly, "free" publications are often part of an overall
> marketing campaign to sell property, goods, or services. For instance, while the
> publication itself may be offered at no cost to the facsimile recipient, the products
> promoted within the publication are often commercially available. Based on this,
> it is reasonable to presume that such messages describe the "quality of any

---

[4] In fact, one 1998 scholarly article estimated that Defendants' services cost U.S. public schools 1.8 billion dollars a year, with the cost to taxpayers of 300 million dollars a year just for the time students spending watching Defendants' sponsored commercial advertisements.   *See* Max B. Sawicky & Alex Molinar, *The Hidden Costs of Channel One*, Educational Studies Policy Laboratory (1998), attached to the Bellin Decl. as Exhibit B at 7.

property, goods, or services." Therefore, facsimile communications regarding
such free goods and services, if not purely "transactional," would require the
sender to obtain the recipient's permission beforehand, in the absence of an EBR
*Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991*, 21 F.C.C.R. 3787, 3814 ¶ 52 (April 6, 2006)(emphasis
added and citations to footnotes omitted)(hereinafter "paragraph 52").

As is apparent from the quote above, the FCC does not require faxes that promote free

goods or services to facially promote the *commercial* availability or quality of goods or services

in order for those faxes to be considered advertisements within the meaning of the TCPA. *See*

*id.* (stating that the free seminars themselves, not the faxes that promote the free seminars, often

"serve as a pretext to advertise commercial products and services."); *id* (stating that free

publications themselves, not the faxes that promote the free publications, often promote products

that are commercially available.).

If the faxes to which the FCC was referring in paragraph 52 facially promoted

commercial availability or quality of goods and services, then there would have been no reason

for the FCC to have written that paragraph in the first place; Under previous sections of the

Report and Order, and previous interpretations by the FCC of the TCPA itself, those faxes

already would have been considered advertisements within the meaning of the TCPA. The

FCC's interpretation of the term advertisement in the TCPA is supported by TCPA cases that

hold that communications whose content solely promotes free goods or services are

advertisements. *See Charvat v. Crawford*, 799 N.E.2d 661, 662-663, 665-666 (Ohio App.

2003)(telephone call that simply offered free publication on how to earn extra income was

advertisement within the meaning of the TCPA); *Margulis v. P & M Consulting, Inc.*, 121

S.W.3d 246, 248, 250-251 (Mo. App. 2003) (prerecorded telephone call that conducted a survey,

offered a free vacation to those who qualified and stated that those who qualified for the free

vacation would be called back, was an advertisement within the meaning of the TCPA

14

notwithstanding the fact that the prerecorded call was "one step removed from the actual sales pitch.").

Nothing in the FCC's interpretation of the term advertisement in paragraph 52 suggests that a fax that promotes free goods and/or services is only an advertisement within the meaning of the TCPA if the free goods and/or services promoted are a pretext to advertising the commercial availability or quality of goods and/or services or are part of an overall marketing plan.  This is also apparent from the fact that, after the FCC discussed the frequency with which free goods and/or service promoted in faxes are a pretext or part of an overall marketing plan to advertise the commercial availability or quality of goods and/or services, the FCC stated "[b]ased on this, it is reasonable to *presume* that such messages describe the 'quality of any property, goods, or services.'"  *Matter of Rules and Regulations*, 21 F.C.C.R. at 3814 ¶ 52.  If the FCC required pretext or an overall marketing plan to be proven to establish TCPA liability when faxes advertise free goods or services, the FCC would have had no reason to *presume* anything regarding these faxes.  It would have been obvious through the evidence of pretext or an overall marketing plan that the free goods and/or services offered in the faxes were for the purpose of promoting the commercial availability or quality of goods and/or services.  Thus, the FCC's *presumption* only makes sense in the context of explaining a *per se* rule regarding all faxes that promote free goods and/or services.

Moreover, because administrative agencies have the power to, and often do enact prophylactic rules that are stricter than the underlying statute in order to accomplish the statute's purposes, it makes sense that the FCC would make a *per se* rule prohibiting all faxes that promote such free goods and/or services.  *See Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 369 (1973) (upholding regulation as prophylactic measure, enacted under the Truth in

Lending Act, that required lenders to make disclosures not mandated by the Truth in Lending Act itself); *United States v. O'Hagan*, 521 U.S. 642 (1997)(upholding SEC regulation that prohibited activity not explicitly prohibited by the underlying statute itself); *Weinberger v. Salfi*, 422 U.S. 749, 774 (1975)(discussing *Mourning*); *Friedman v. Heckler*, 765 F.2d 383, 387-388 (2nd Cir. 1985)(recognizing power of agency to issue broad prophylactic rules).  Moreover, even if this Court were to disagree with the FCC's reasoning for creating a *per se* rule, the Hobbs act, 28 U.S.C. § 2342(1), precludes this Court's from reviewing this rule.  *See, e.g., FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984)(ruling that District court did not have the power to enjoin FCC action as ultra vires because "[e]xclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."); *C.E. Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 445-450 (7th Cir. 2010)(same in TCPA context); *Gottlieb v. Carnival Corp.*, 635 F. Supp.2d 213, 218-221 (E.D.N.Y. 2009)(same); *Leckler v. Cashcall, Inc.* 2008 WL 5000528, *2-*3 (N.D. Cal. 2008)(same).

    In any event, even if this Court had the jurisdiction to review the correctness of the FCC's *per se* rule, the FCC's interpretation that advertisements for free goods and services are covered under the TCPA is reasonable for the reasons given by the FCC and would be upheld under *Chevron* deference.  *See G.M. Sign, Inc. v. MFG.com. Inc.*, 2009 WL 1137751, *1-*2 (N.D. Ill. 2009)(according *Chevron* deference to, and accepting the FCC's construction of the TCPA as prohibiting fax advertising for free goods and/or services, and finding fax promoting free online marketplace for buying and selling goods to be an "advertisement" within the meaning of the TCPA); *Green v. Anthony Clark Int'l Ins. Brokers, Ltd*, 2009 WL 2515594, *1-*3 (N.D. Ill. 2009)(fax advertising free brokerage services was "advertisement" within the meaning of the TCPA).  *See also Holmes v. Back Doctors. Ltd*, 2009 WL 3425961, *3-*4 (S.D.

Ill. 2009)(finding that FCC's construction of the TCPA as prohibiting fax advertising of free goods and/or services to be "reasonable and consistent with the language and purpose of the statute.").

*Phillips Randolph Enters, LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp.2d 851 (N.D. Ill. 2007), cited by Defendants, is not to the contrary.   In *Phillips*, the court concluded that the fax at issue promoted participation in a research study about a healthcare program, not a good or service.  *Id.* at 853.  Accordingly, it was only because the Plaintiff had argued that the research study was the equivalent of a pretextual free seminar, that that the Court found it necessary to point out that the complaint in that case had not alleged that the research was a pretext to advertise goods and/or services.  *See id.* at 852-853.  *Phillips* nowhere held that a fax advertisement for free goods and/or services had to be pretextual to qualify as an "advertisement" under the TCPA.

In any event, even if it pretext or an overall marketing plan were necessary, the Complaint and its incorporated exhibits alleged pretext or an overall marketing plan here.  As discussed above, it is explicitly stated in the faxes attached to the Complaint, that Defendants provide the "free" transmission of news and video content to allow Defendants to run sponsored commercial advertisements to a captive body of students on 90% of school days.   If the provision of these "free" transmissions in order to show sponsored commercial advertisements to students does not qualify as a pretext or as part of an overall marketing plan to sell goods and/or services within the meaning of paragraph 52, it would be hard to imagine what would so qualify.

Defendants' claim   that the faxes attached as exhibit A to the Complaint are "informational" faxes, akin to newsletters, that are permitted under the TCPA, "does not pass the straight-face test." *Sadowski v. ODC Biomedical, Inc.*, 2008 WL 5089229 at *2 (N.D. Ill. 2008)

(rejecting the defendants' argument that a fax promoting a training seminar, which is a service, was merely an "invitation" and not an advertisement within the meaning of the TCPA.). In determining whether an advertisement is "a *bona fide* 'informational communication,' [courts must] consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. [Courts] may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender." *Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3814-3815 ¶ 53 & n.187 (2006). Nothing in the Complaint or its incorporated attachments suggests that the faxes at issue in this case meet any of the above criteria, let alone all of them. In fact, as noted above, every single fax attached to the Complaint advertises the availability of Defendants' news and video services. These advertisements are not incidental to the faxes, they are the faxes' *raison d'etre*. Accordingly, it is plain that the faxes at issue in this case are advertisements within the meaning of the TCPA, and not, as Defendants contend, informational faxes exempt from the TCPA.

## POINT IV

**THE FAXES ATTACHED TO THE COMPLAINT, WHETHER SOLICTED OR UNSOLICITED ARE ACTIONABLE UNDER THE TCPA BECAUSE THEY EITHER CONTAIN NO OPT-OUT NOTICE WHATSOEVER OR CONTAIN AN OPT-OUT NOTICE THAT DOES NOT CONTAIN ALL THE INFORMATION REQUIRED BY THE TCPA AND THE REGULATIONS PROMULGATED THEREUNDER**

A.   **There is a Private Cause of Action Under the TCPA Against Persons Who Send or Cause to Be Sent Fax Advertisements that Do Not Contain the Opt-Out Notice Required by the TCPA and the Regulations Promulgated Thereunder.**

Defendants contend that there is no private cause of action under the TCPA for sending unsolicited or solicited fax advertisements that do not contain the opt-out notice required by the TCPA and the regulations promulgated thereunder.  Defendants are wrong.

With respect to unsolicited advertisements, the TCPA and the regulations promulgated thereunder provide that if a person or entity sends an unsolicited fax advertisement that does not contain an opt-out notice that satisfies all the requirements of the TCPA and the regulations promulgated thereunder, there is no defense to liability.   47 U.S.C. § 227(b)(1)(C)(i), (b)(1)(c)(ii), (b)(1)(C)(iii)(requiring opt-out notice as one of three cumulative prerequisites to sending an unsolicited fax advertisement that does not violate the TCPA); 47 U.S.C. § 227(b)(2)(D) (describing content of required opt-out notice); 47 C.F.R. § 64.1200(a)(3), (a)(3)(i), (a)(3)(ii), (a)(3)(iii) (requiring opt-out notice as one of three cumulative prerequisites to sending an unsolicited fax advertisement and describing the content of the required opt-out notice); *Talty v. Strada Capital Corp.*, 2009 WL 3328042 (Ohio C.P. 2009) (unsolicited fax advertisements without opt-out notice as required by 47 U.S.C. § 227(b)(2)(D) actionable under the TCPA pursuant to 47 U.S.C. § 227(b)(3)).[5]

With respect to solicited fax advertisements, exactly the same opt-out notice satisfying 47 C.F.R. § 64.1200(a)(3)(iii) is required, and a failure to do so violates the plain meaning 47 C.F.R. § 64.1200(a)(3)(iv), which was promulgated pursuant to 47 U.S.C. § 227(b), and is therefore

_____

[5] *See G.M. Sign, Inc. v 400 Freight Services, Inc.*, 2010 TCPA Rep. 1934, at 2 (attached to the Bellin Decl. as Exhibit E) (same); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936, at 1-2 (Mass. Super. July 3, 2009)(attached to the Bellin Decl. as Exhibit F) (defense of prior existing business relationship is inapplicable when faxes at issue do not contain the opt-out notice required by § 227(b)(2)(D)) ; *Tryon v. Nationwide Chem. Corp.*, 2007 WL 4965139 (Ohio C.P. 2007) (same).

actionable pursuant to 47 U.S.C. § 227(b)(3).  47 C.F.R. § 64.1200(a)(3)(iv)("A facsimile

advertisement that is sent to a recipient *that has provided prior express invitation or permission*

to the sender must include an opt-out notice that complies with the requirements in paragraph

(a)(3)(iii) of this section") (emphasis added); 47 U.S.C. § 227(b)(3)(A) (establishing a private

right of action for, among other things, "a violation . . . of the regulations prescribed under [47

U.S.C. § 227(b)]"); *Mims v. Arrow Financial Services*, 132 S. Ct. 740, 744 (2012) (recognizing

that Congress explicitly authorized a private right of action for violations of the regulations

promulgated by the FCC pursuant to the TCPA); *Ketch, Inc.* v. *Heubel Material Handling Inc.,*

2011 WL 1807329, *1 (W.D. Okla. 2011) (fax advertisements are actionable under the TCPA,

whether or not solicited, if the fax advertisements do not contain the opt-out notice required by

the 47 U.S.C. § 227(b) and the regulations promulgated thereunder) *Medical West Ballas*

*Pharmacy, Ltd v. Anda, Inc*., 2011 WL 1481007 (Mo. Cir. 2011) (same); FCC Amicus Brief in

*Nack v. Walburg*, No. 11-1460 dated February 24, 2012 ("FCC Amicus") (same), attached to the

Bellin Decl. as Ex. F[6]; *Talk Am. Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2261 (2011)(courts

must defer to an agency's interpretation of its own regulations in an amicus brief).[7]

        Indeed, *In the Matter of the Junk Fax Prevention Act of 2005*, ___ FCCR___, 2012 WL

1548554 (May 2, 2012), the FCC once again confirmed that a private cause of action exists

under the TCPA against persons who send solicited fax advertisements without the proper opt-

out notice.  In *Matter of Junk Fax*, a party petitioned the FCC to issue a declaratory judgment

---

[6] This Court can take judicial notice of the FCC's amicus brief in *Nack*.  *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 92 (2nd Cir. 2000) (taking judicial notice of a complaint filed in another action); *Shenk v. Citibank/Citigroup/Citicorp.*, 2010 WL 5094360, *2 (S.D.N.Y. 2010) ("Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."); *G-I Holdings v. Barron & Budd*, 2003 WL 193502, *7 (S.D.N.Y. 2003)(taking judicial notice of complaint filed in New York County Supreme Court).
[7] *See MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*, 2008 WL 6970582 (Mo. Cir. 2008) (same); *Collins v. Locks & Keys of Woburn, Inc.*, 2009 TCPA Rep. 1936 (Mass. Super. July 3, 2009) (same).

concerning the statutory basis for 47 C.F.R. § 64.1200(a)(3)(iv). *See Id.* at *1, para. 4. The FCC dismissed the petition for a variety of reasons not germane to the instant case. *Id.* at *2, paras. 5-6. However, the FCC went on to hold that it had the authority to issue 47 C.F.R. § 64.1200(a)(3)(iv) under that portion of 47 U.S.C. § 227 which details the requirements of the opt-out notice, which is 47 U.S.C. § 227(b). *Id.* at *2, para. 7. By confirming that 47 C.F.R. § 64.1200(a)(3)(iv) was promulgated pursuant to 47 U.S.C. § 227(b), the FCC made clear that there is a private cause of action for the violation of that regulation, because, as noted above, 47 U.S.C. § 227(b)(3) specifically states that there is a private cause of action for violations of the regulations promulgated pursuant to 47 U.S.C. § 227(b).[8]

To the extent that the district court opinion in *Nack v. Walburg*, 2011 WL 310429 (E.D. Mo. 2011) or the Ohio court's opinion in *Miller v. Painter's Supply Co.*, 2011 WL 3557018 (Ohio App. 2011) held the contrary, those holdings are no longer good law (which they never were), in light of the FCC's interpretation of 47 C.F.R. § 64.1200(a)(3)(iv) in its February 24, 2012 amicus brief and the FCC's Order in *In The Matter of the Junk Fax, Prevention Act of 2005*, ___ FCCR___, 2012 WL 1548554 (May 2, 2012). In fact, the FCC submitted the amicus brief for the very purpose of urging the Eighth Circuit to reverse the *Nack* district court opinion. *See* FCC Amicus at 11, 24.

---

[8] Because, as the FCC has confirmed that 47 C.F.R. § 64.1200(a)(3)(iv) was promulgated pursuant to 47 U.S.C. § 227(b), the cases cited by Defendants for the proposition that there is no private right of action for the violation of the technical requirements of 47 C.F.R. § 64.1200(d), which was promulgated pursuant to 47 U.S.C. § 227(d), are irrelevant. Moreover, the fact that *In The Matter of the Junk Fax, Prevention Act of 2005* was issued by the Acting Chief of the FCC's Consumer and Governmental Affairs Bureau ("the Bureau"), rather than the FCC as a whole, is also irrelevant. That is because the FCC has delegated authority to the Bureau to adjudicate in this area. *See, e.g.,* 47 U.S.C. § 155(c)(1); 47 C.F.R. §§ 0.5(c), 0.141(a). 0.361 *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004).

Accordingly, it is apparent that there is a private right of action under the TCPA against persons who send unsolicited and solicited faxes that do not contain the proper opt-out notice.

**B.      Because the Group 1 Faxes Contain No Opt-Out Notice And the Opt-Out Notices on the Group 2 Faxes Do Not Contain All of Information Required Under the TCPA and the Regulations Promulgated Thereunder, Defendants Are Liable Under the TCPA.**

In their motion to dismiss, Defendants do not deny that the Group 1 faxes contain no opt-out notices.  Moreover, Defendants do not deny that the opt-out notice on the Group 2 faxes, which merely states "TO OPT OUT OF FUTURE OFFERS, SIMPLY WRITE 'REMOVE' AND RETURN THIS PAGE BY FAX TO 770.613.0222 OR CALL ME TOLL FREE AT 1.888.467.3784.  THANK YOU!", fail to contain all of the information required by 47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. § 64.1200(a)(3)(iii).  Specifically, Defendants do not deny that the purported opt-out notice on the Group 2 Faxes (1) does not state that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines; (2) does not state that a person's request to opt-out of future fax advertising will only be effective if the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates; (3) the notice does not state that that failure to comply, within 30 days, with such a request is unlawful; and (4) the notice does not state that such a request will only be effective if the person making the request does not, subsequent to such request, provide express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at his or her telephone facsimile machine.

Defendants appear to argue that notwithstanding the description of the precise information necessary to be conveyed in the opt-out notice, *see* 47 U.S.C. § 227(b)(2)(D), (b)(2)(E) and 47 C.F.R. § 64.1200(a)(3)(iii), (a)(3)(v), they did not have to convey all of the

22

information in their opt-out notices, but only needed to have opt-out notices that "substantially complied" with the TCPA's statutory and regulatory requirements.  Defendants' argument is without merit because it is contrary to the FCC's recent controlling order in *In the Matter of Response Card Marketing, Inc.*, ___ FCCR ___, 2012 WL 1225062 (April 10, 2012), which requires that that all of the opt-out information detailed in 47 U.S.C. § 227(b)(2)(D), (b)(2)(E) and 47 C.F.R. § 64.1200(a)(3)(iii), (a)(3)(v) be contained in an opt-out notice.  *Id.* (holding that purported opt-out notice that did not contain ***all*** of the information required by the TCPA and the regulations promulgated thereunder was invalid).[9]

Moreover, if accepted, Defendants' argument that its opt-out notices did not need to convey all of the information in the TCPA and the regulations promulgated thereunder, would render the sections of the statute and regulations that list the specific information that must be conveyed in the opt-out notice as superfluous, a result which is impermissible under well-accepted rules of statutory and regulatory construction.  *See, e.g., Ransom v. F.I.A. Card Servs., N.A.,*131 S. Ct. 716, 724 (2011); *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004); *Cammarano v. United States*, 258 U.S. 498, 505 (1959)(refusing to read language in a regulation as surplusage). The opt-out notice on the Group 2 faxes simply does not convey all of the information required by the TCPA and the regulations promulgated thereunder, and therefore is deficient under the TCPA. Cf. *Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2nd Cir. 2001) (failure to include all of the information required by the Fair Debt Collection Practices Act ("FDCPA") in the Notice of Debt/Validation Notice violates the FDCPA); *Huff v. Dobbins*, 182 F.3d 922, 1999 WL 370036, *4 (7th Cir. 1999)("The [FDCPA] 'leaves no room for deviation in the language of

---

[9] *Response Marketing* was issued by the Chief of the FCC's Enforcement Bureau, but the order must be treated as if issued by the FCC as a whole. That is because the FCC has delegated authority to the Enforcement Bureau to adjudicate in this area.  *See, e.g.,* 47 U.S.C. § 155(c)(1); 47 C.F.R. §§ 0.5(c), 0.111(a)(18), 0.311; *Indiana Bell*, 362 F.3d at 387.

the validation notice.'" [quoting *Jang v. A.M. Mille & Assoc.*, 122 F.3d 480, 482 (7th Cir. 1997)]).

For these reasons defendants' reliance on *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019 at *5 (W.D. Wis. 2009) is misplaced.  In *Landsman*, the Court did not absolve the defendant of the duty to include an opt-out notice as required by the TCPA. Rather, the court held that the defendant's opt-out notice, which contained specific instructions on how to opt-out required by the statute and regulations and which specifically stated that "[f]ailure to comply within a reasonable time with a request to opt-out would be unlawful," satisfied the requirements of 47 C.F.R. §§ 64.1200(a)(3)(iii)(C), 64.1200(a)(3)(iii)(B).  *Id.* at *4-*7.  In the instant case, the opt-out notice on the Group 2 faxes does not even contain the information that was in the *Landsman* opt-out notice, and contain the additional deficiencies listed above as well.

Moreover, to the extent that the *Landsman* court ruled that an opt-out notice need not specifically convey that a failure to comply within "30 days" with an opt out notice is unlawful, that ruling was incorrect because it is in direct conflict with the FCC's subsequent ruling in *Response Marketing* and with the plain meaning of 47 U.S.C. §§ 227(b)(1)(C)(iii), 227(b)(2)(D)(ii) and 47 C.F.R. § 64.1200(a)(3)(iii)(B).   47 U.S.C. §§ 227(b)(1)(C)(iii), 227(b)(2)(D)(ii) specifically require "***the notice [to] state*** that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and ***that failure to comply, within the shortest reasonable time, as determined by the Commission***, ***with such a request meeting the***

*requirements under subparagraph (E) is unlawful.*" (emphasis added).[10]  And, 47 C.F.R. § 64.1200(a)(3)(iii)(B) specifically requires that "***[t]he notice state[]*** that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and *that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(3)(v) of this section is unlawful.*"  (emphasis added).

That 47 C.F.R. § 64.1200(a)(3)(iii)(B) requires the "30 day" limit to be specifically conveyed on the opt-out notice is made even more clear by the fact that 47 C.F.R. § 64.1200(a)(3)(vi) is a separate section of the regulation that specifically describes the requirement that a sender comply with an opt-out request within the shortest reasonable time and at the most 30 days from the request.  Mentioning the 30 day time limitation again in § 64.1200(a)(3)(vi) would have been superfluous unless the previous mention of that 30 day time limit in § 64.1200(a)(3)(iii)(B) was meant to describe what the opt-out notice had to convey.  As is apparent, though the statute and regulations do not mandate the use of any specific wording, font or type size in the opt-out notice to convey the 30 day limit on complying with an opt-out request, they do mandate that the 30 day time limit, as well as the other information discussed above, be expressly conveyed in the opt-out notice.  Accordingly, *Landsman*'s holding to the

---

[10] To support its argument, *Landsman* points to general language in an FCC Order stating that "rules specifying the font type, size and wording of the notice might interfere with fax senders' ability to design notices to serve their customers." Rules and Regulations Implementing the telephone Consumer Protection Act of 1991, Junk Fax Protection Act of 2005, 71 FR 25967-01, 25,969 (May 3, 2006). What *Landsman* ignores is the import of the sentence immediately following that states: "However, the Commission makes some additional determinations about the opt-out notice so that facsimile recipients have the information necessary to avoid future unwanted faxes." *Id.* Some of those additional determinations are discussed in the text of the order. *Id.* But the specific information (not the exact wording, font type and size) required to be conveyed in the opt-out notice is detailed in 47 U.S.C. §§ 227(b)(2)(D), (b)(2)(E) and 47 C.F.R. § 64.1200(a)(3)(iii), (a)(3)(v).

contrary is wrong and should not be followed.

In sum because the Group 1 faxes contain no opt-out notice and the opt-out notices on the Group 2 faxes do not contain all of the information required under the TCPA and the regulations promulgated thereunder, Defendants are liable under the TCPA for sending both the Group 1 and Group 2 faxes, whether solicited or not, and the Complaint states a cause of action.

**POINT V**

**CORPORATIONS, SUCH AS PLAINTIFF, MAY BRING CAUSES OF ACTION UNDER GBL § 396-aa**

GBL 396-aa(3) provides that *"[a]ny person"* who receives a fax in violation of the statute may bring an action against the violator.  GBL 396-aa(3)(emphasis added).  Generally, under New York law, the word "person" in a statute includes corporations.  However, Defendants contend that because GBL § 396-aa(1) provides that is "unlawful for *a person*, corporation, partnership or association" to, among other things, send an unsolicited fax advertisement, then the word person cannot include corporations. GBL § 396-aa(1)(emphasis added).  That is because, Defendants' argue, any other interpretation would render the word "corporation" in GBL § 396-aa(1) superfluous.  Defendants are wrong for a number of reasons.

First of all, N.Y. General Construction Law § 37 provides that the term "person" in a statute includes a corporation.  N.Y. General Construction Law § 37.   It is for that reason that when New York statutes do not contain a definition for the word "person,"  New York Courts interpret the word person to include corporations.  *See City of New York v. Smokes Sprit.com, Inc.*, 12 N.Y.23d 616, 621-622 (2009); *Douglaston Civic Ass'n v. Galvin*, 36 N.Y.2d 1, 5 n.3, (1974); *Greater Buffalo Press, Inc. v. Harris Corp.*, 1987 WL 18693, *6-*7 (W.D.N.Y. 1987). Accordingly, the word person in GBL § 396-aa(3), which creates the cause of action under GBL § 396-aa, includes corporations within its ambit.

26

This interpretation is bolstered by the fact that GBL § 396-aa(3), which creates the cause of action for the violation of GBL § 396-aa, states that "*[a]ny person*" may bring a cause of action for a violation of the statute, while the prohibition in GBL § 396-aa(1) states that "[it] shall be unlawful for *a person*, corporation partnership or association. . . ." If the interpretation of the word "person" GBL § 396-aa(3) was meant to only include natural persons, GBL § 396-aa(3) would not have put the word "any" before the word person.  The use of the word "any" before the word "person" in GBL § 396-aa(3), as opposed to use of the word "a" before the word "person" in GBL § 396-aa(1), makes clear that GBL § 396-aa(3) meant to include a definition of "person" at least as broad as that contained in N.Y General Construction Law § 37.  Otherwise the use of the word "any" would itself be superfluous.

In any event, even if one could argue that the plain meaning of the word "person" in GBL § 396-aa meant an individual as opposed to a corporation, which one cannot, that would not avail Defendants here.  That is because it is well settled that a remedial statute, like GBL § 396-aa must be liberally construed to achieve its objective, which, in this case, is to prevent the sending of unsolicited fax advertisements for goods and services.  *See White v. County of Rockland*, 97 N.Y.2d 336, 339 (2002)(remedial statutes should be liberally construed); *Sanders v. Winship*, 57 N.Y.2d 391, 395 (1982)(same).  It is also because it is well settled New York law that, in dealing with a remedial statute like GBL 396-aa, "when the [statute's] plain meaning d[oes] not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole [] Court's [should] follow[] that purpose, rather than the literal words." *New York State Psychiatric Association v. New York State Department of Health*, 19 N.Y.3d 17, 25-26 (2012)(internal quotation marks omitted).  *Accord Uniformed Firefighters Association v. Beekman*,  52 N.Y.2d 463, 471-472  (1981);  *Harbeck v. Pupin*, 123 N.Y. 115, 119 (1890); *In re*

27

*Sombroto*, 50 A.D.3d 63, 68-70 (App. Div. 2008).

In this case the legislative history of GBL § 396-aa, when it was enacted in 1989, makes plain that corporations may utilize the statute's private right of action. The 1989 legislative history of GBL 396-aa states repeatedly that it was enacted because "[b]usinesses and government offices are increasingly reliant upon the telefacsimile mode of communications" and "transmissions of unsolicited offers to sell goods and services can significantly interfere with the right of owners of recipient telefacsimile machines to receive or send normal business communications." *See Governor's Bill* Jacket, 1989 Chapter 597 ("1989 Bill Jacket"), attached to the Bellin Decl. as Exhibit C at BY-000079-81, 90. Indeed, the legislative history recognized that at the time of GBL § 396-aa's passage that "the primary use of fax machines [was] for business purposes." *Id.* at BY-000086. Because the legislature recognized that businesses were being inundated with unsolicited faxes, and passed GBL § 396-aa to protect those businesses, to interpret GBL § 396-aa as prohibiting corporations, partnerships or associations — among the most popular forms of business ownership — from bringing lawsuits for those violations would be "unreasonable" and "plainly at variance with the policy of the legislation as a whole." *New York State Psychiatric Association*, 19 N.Y.3d at 25-26. Accordingly, given the liberal construction that must be given remedial statutes like GBL § 396-aa, the Plaintiff, a religious corporation, may sue under GBL § 396-aa.

**POINT VI**

**CLASS ACTIONS FOR VIOLATIONS OF GBL** § 396-aa MAY **BE BROUGHT IN FEDERAL COURT**

Defendants asserts that class actions may not be brought in federal court for violations of GBL § 396-aa for two reasons. First, because GBL § 396-aa(3) provides that "any person who has received a telefacsimile transmission in violation of this section may bring an action ***in his***

28

*own name* to recover *his actual damages* or one hundred dollars, whichever is greater"  GBL §

396-aa(3)(emphasis added).   Second, because N.Y. CPLR § 901(b) prohibits class actions for

statutory damages from being brought in New York courts.    Both reasons are without merit.

The language Defendants point to in GBL § 396-aa(3) — that a person "may bring an

action *in his own name* to recover *his actual damages* or one hundred dollars" (emphasis added)

— does not in any way prohibit class actions under that statute.  The language neither mentions

class actions nor refers to CPLR § 901, which is New York's class action statute.  Moreover,

New York courts have routinely permitted class actions to go forward for violations of statutes

that contain the identical language, and Plaintiff has not found a single New York case

interpreting this language otherwise.  *See, e.g., Broader v. MBNA Corp.*, 281 A.D.2d 369, 371

(App. Div. 2001); *Super Glue Corp. v. Avis Rent A Car System, Inc.*, 132 A.D2d 604, 606-608,

(App. Div. 1987).  This is completely consistent with New York's very liberal policy on

permitting class actions.  *See City of New York v. Maul*, 14 N.Y.3d 499, 508 (2010).  Indeed,

even the United States Supreme Court has recognized that the fact that a statute  is phrased in

individual terms does not preclude class action treatment.  *See Califano v. Yamasaki*, 442 U.S.

682, 700 (1979).

Moreover, as with numerous other statutes under the GBL, it is apparent that the reason

the New York legislature included this language in the statute was to make clear that the lawsuit

authorized under GBL § 396-aa was a lawsuit by a non-governmental plaintiff for the benefit of

the non-governmental plaintiff, as opposed to a lawsuit brought by the New York State Attorney

General.  *Compare* GBL §§ 23(9), 349(b), 350-d, 399-p(8), 660(3)(lawsuits to be brought by the

Attorney General) *with*  GBL §§ 23(10), 349(h), 350-e, 399-p(9), 660(2)(statutes using the "in

his own name" and "his actual damages" language to indicate that parallel lawsuits can be

brought by private persons as opposed to the Attorney General).  "Consequently, it is reasonable to assume that the Legislature intended [that language] to carry the same meaning in the similar context of the statute at bar."  *Rosenblum v. New York State Workers Compensation Board*, 309 A.D.2d 120, 125  (App. Div. 2003); McKinney's Statutes § 236 at 402 ("[e]ven though the words occur in different statutes, if the acts are similar  in intent and character the same meaning may be attached to them."),

The fact that GBL § 396-aa has no explicit reference to enforcement by the Attorney General is irrelevant because  N.Y. Executive Law § 63(12) empowers the New York Attorney General to bring actions for violations of the GBL, and therefore the "in his own name" and "his actual damages" language is still necessary to make clear that the cause of action provided for in GBL 396-aa is for private parties and not the Attorney General.  Second, as even Defendants concede (*see* Defendants' Brief at 21), the legislative history of GBL § 396-aa indicates that, at least at one point, a proposed version of GBL § 396-aa contained an explicit provision empowering the New York Attorney General to sue under that statute.  *See* Bellin Decl., Exhibit C at BY-000081.

In any event, as discussed above in Point I(B), under recent Supreme Court precedent, Rule 23 of the Federal Rules of Civil Procedure, rather than any contrary state law, controls whether a state-law cause of action may be brought as a class action in federal court.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437-1448 (2010)(plurality opinion)(holding that Rule 23 rather than N.Y. CPLR § 901(b), controlled whether a class action under New York law for statutory damages could be brought in federal court); *id.* at 1457*,* 1460 (Stevens, J., concurring)(same). Accordingly, Defendants' argument that N.Y. CPLR § 901(b), or the "in his own name" and "his actual damages" language in GBL §

396-aa, prevents a class action for statutory damages under GBL 396-aa from being brought in federal court is without merit.

Moreover, even according to Justice Stevens concurring opinion, which suggests that there may be circumstance under which a Federal Rule of Civil Procedure can be rendered inoperative if "the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state created right," *id.* at 1452 (Stevens, J. concurring), the "in his own name" and "his actual damages" language in GBL § 396-aa could not be interpreted to displace the operation of Rule 23 here. That is because, under New York law, as described above, that language cannot be interpreted to prohibit class actions under GBL § 396-aa. At the very least, the intention language at issue in GBL § 396-aa is unclear as to the permissibility of class actions under that statute and therefore, even according to Justice Stevens view, the language is insufficient to overcome the use Fed. R. Civ. P. 23 here. *See id.* at 1457, 1460 (Stevens, J., concurring)("The mere possibility that a federal rule would alter a state-created right is not sufficient [to make the federal rule inapplicable]. There must be little doubt.").

### POINT VII

### THE FAXES AT ISSUE "PROMOT[ED] GOOD OR SERVICES FOR PURCHASE WITHIN THE MEANING OF GBL § 396-aa

As discussed in Point III above, the Complaint and the attachments thereto allege that Defendants only provide their news and video services to schools if the schools provide the Defendants with valuable consideration. This consideration is not cash, but consists of, among other things, (1) guaranteed access to the school itself; and (2) guaranteed access to the school's students on 90% of school days; and (3) guaranteed transmission of Defendants' two minutes of sponsored commercials, for every 10 minutes of news, to the school's students on 90% of school

days.  *See* Bellin Decl., Exhibit A at BY-000044, 45, 47, 49, 52, 53, 54, 55, 58, 61-66, 71, 73.

Thus, the Complaint sufficiently alleges that the news and video services advertised in the faxes

were "goods or services for purchase by the recipient" within the meaning of GBL § 396-aa.

This is especially the case because GBL § 396-aa is a remedial statute and must be liberally

construed to achieve its objective, *see White v. County of Rockland*, 97 N.Y.2d 336, 339 (2002),

which is to prevent the sending of unsolicited fax advertisements for goods and services.

In addition, as also discussed in Point III above, the faxes at issue were clearly a pretext

or part of an overall marketing plan to advertise the goods and services described in the

sponsored commercials that Defendants were going to show to students as part of the news

services Defendants were advertising in their faxes.  Given the requirement that GBL § 396-aa

be liberally construed, it should be interpreted as covering, as does the TCPA, pretextual faxes or

faxes that are part of an overall marketing plan.  Otherwise, as the FCC and the cases cited in

Point III make clear by analogy, senders could easily evade GBL § 396-aa through artifice and

GBL § 396-aa would be rendered a dead letter.

As with the TCPA, the fact that GBL § 396-aa does not specifically refer to a pretext or

an overall marketing plan is irrelevant.  It is long-settled New York law that, when dealing with a

remedial statute like GBL 396-aa, even if the facts of a case implicating that statute "may not be

within the letter [of the statute], [if] [they] [are] within the intent of the statute, [] effect must be

given to this intent, though not expressed within the letter of the statute." *Harbeck v.* Pupin, 123

N.Y. 115, 119 (1890).  *Accord  New York State Psychiatric Association v. New York State*

*Department of Health*, 19 N.Y.3d 17, 25-26 (2012); *Uniformed Firefighters Association v.*

*Beekman*, 52 N.Y.2d at 471-472.  Accordingly, even if schools were not required to provide

valuable consideration for Defendants' news and video services, the faxes would still violate

GBL § 396-aa because they were clearly a pretext or part of an overall marketing plan to advertise the goods and services described in the sponsored commercials that Defendants were going to show to students as part of the news services they were advertising in their faxes.

## POINT VIII

**ALL OF THE GBL § 396-aa CLAIMS IN THE COMPLAINT ARE TIMELY BECAUSE THEY ARE ALL WITHIN N.Y. CPLR § 214(2)'s THREE YEAR STATUTE OF LIMITATIONS**

GBL 396-aa, which contains a cause of action and provides for a statutory penalty of $100 (a) for each unsolicited fax advertisement sent to a person without a prior contractual or business relationship with the sender (*see* GBL 396-aa(1), (3)); and (b) for each unsolicited fax advertisement which does not contain the proper opt-out notice ((*see* GBL 396-aa(2), (3)), creates "liability [that] would not exist but for [the] statute." *Gaidon v. Guardian Life Ins. Co. of America*, 96 N.Y.2d. 201, 208 (2001)(internal quotation marks omitted). *See Banca Commerciale Italiana v. Northern Trust Intern. Banking Corp.*, 160 F.3d 90, 94-95 (2nd Cir. 1998). Accordingly, under well-settled New York law, the statute of limitation that applies to GBL 396-aa is the three-year statute of limitations provided for in N.Y. CPLR § 214(2). *See Gaidon,* 96 N.Y.2d at 208-210; *Banca Commerciale Italiana v. Northern Trust Intern. Banking Corp.*, 160 F.3d at 94-95.

Defendants' contention that the one year statute of limitations contained in NY CPLR § 215(4) should apply to this case is without merit. NY CPLR § 215(4) only applies to cases when plaintiffs are standing in the shoes of the government to collect a liability, penalty or forfeiture. *See Matter of New York State Assn. of Plumbing-Heating- Cooling Contrs. v. Eagan*, 65 N.Y.2d 793, 795-796 (1985); *Clowes v. Pulver*, 258 A.D.2d 50, 54-55 (App. Div. 1999). In the instant case, the cause of action contained in GBL § 396-aa is for private persons and other non-

governmental entities.  *See* Point VI, supra.

Moreover, Defendants' claim that the one-year statute of limitations contained in NY CPLR 215(3) applies here because GBL § 396-aa was enacted to protect consumer privacy is also without merit.  Nothing in NY CPLR § 215(3) refers to a general right of privacy, but only refers to the statutory right to privacy under N.Y. Civil Rights Law § 51 that itself only concerns the right of a person not to have their picture, portrait or voice used in advertising.  In any event, "in the absence of a limitation period specifically governing the claim at issue, it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought."  *Hartnett v. New York City Transit Auth.*, 86 N.Y.2d 438, 443-444 (1995).  Because GBL § 396-aa encompasses claims that were never legally cognizable before its enactment, the three-year statute of limitations in N.Y. CPLR § 214(2) applies.  *See id.* (rejecting application of six-year statute of limitations in NY CPLR § 213(1), which generally governs actions in equity, and applying the limitation period of N.Y. CPLR § 214(2) to statute that only provided for equitable relief because the statute "create[d] a cause of action unknown in the common law.").

## POINT IX

## ALL OF FAXES ATTACHED TO THE COMPLAINT FAIL TO SATISFY THE OPT-OUT NOTICE REQUIREMENTS OF GBL § 396-aa

Defendants do not contest that the Group 1 faxes, which do not contain any opt-out notice, violate that opt-out notice requirements  of GBL § 396-aa(1), (2).  However, Defendants contends that the opt-out notice contained on the Group 2 faxes — which states "TO OPT OUT OF FUTURE OFFERS, SIMPLY WRITE 'REMOVE' AND RETURN THIS PAGE BY FAX TO 770.613.0222 OR CALL ME TOLL FREE AT 1.888.467.3784.  THANK YOU!" — satisfies all of the opt-out notice requirements of GBL § 396-aa(1), (2).  Defendants are wrong.

GBL § 396-aa(2) provides that "[e]very unsolicited telefacsimile message sent to a recipient shall contain a notice that informs the recipient of the ability, granted by subdivision one of this section, to prevent the transmission of future unsolicited telefacsimile messages." GBL § 396-aa(2). GBL § 396-aa(1) provides that a fax recipient can opt-out of receiving future fax advertisements using "***any verbal, written or electronic means***". GBL § 396-aa(1)(emphasis added). There is nothing in the Group 2 opt-out notice that informs a fax recipient that the recipient can use "***any verbal, written or electronic means***" to opt-out. Accordingly, the opt-out notice for the Group 2 faxes violates GBL § 396-aa(2). The fact that the opt-out notice for the Group 2 faxes informs the recipient that the recipient can opt-out of "future offers" and contains a fax number and a toll free number to call to do so, is insufficient.

## <u>CONCLUSION</u>

For the above-stated reasons, Defendants' motion should be denied in its entirety.

Dated: White Plains, New York
         June 20, 2012

Respectfully submitted,

**BELLIN & ASSOCIATES LLC**

By:/s/ Aytan Y. Bellin
Aytan Y. Bellin, Esq.
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
(212) 571-0284 (fax)

*Attorneys for Plaintiff Bais Yaakov of Spring Valley and the Proposed Classes*