UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————

BAIS YAAKOV OF SPRING VALLEY, on behalf of
itself and all others similarly situated,

                                Plaintiff,                12-CV-581 (CS)

            - against -                        **OPINION
AND ORDER**

ALLOY, INC. AND CHANNEL ONE, LLC,

                                Defendants.

—————————————————————————

Appearances:

Aytan Bellin
Bellin & Associates LLC
White Plains, New York
*Counsel for Plaintiff*

Suzanna Marie Meyers Morales
Lathrop & Gage LLP
New York, New York
*Counsel for Defendants*

Blaine Kimrey
Lathrop & Gage LLP
Chicago, Illinois
*Counsel for Defendants*

Seibel, J.

       Before the Court is the motion of Defendants Alloy, Inc. and Channel One, LLC to

dismiss the Complaint ("Compl.") of Plaintiff Bais Yaakov of Spring Valley for violations of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and New York General

Business Law ("GBL") § 396-aa.[1]  (Doc. 20.)  For the reasons stated below, Defendants' motion

is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

I assume the facts (but not the conclusions) as alleged in the Complaint to be true.  This

case is a putative class action arising out of faxes that Channel One, LLC.[2] ("Channel One") sent

to Plaintiff and others similarly situated, allegedly in violation of the TCPA, 47 U.S.C. § 227,

and GBL § 396-aa, which prohibit the unsolicited transmission of fax advertisements.  Channel

One is a leading television news network for teens nationwide.  (Compl. ¶ 10.)  Channel One

provides a free television news program to schools, and its service is financed by two minutes of

commercials in the daily ten-minute news program.  (*Id.* Ex. A, at BY-000044.)

Plaintiff alleges at least eighteen specific instances between February 19, 2008 and

February 16, 2011 when Defendants sent unsolicited fax advertisements to Plaintiff, and alleges

various other unspecified instances thereafter.  (*Id.* ¶ 12.)  Plaintiff alleges that eight of the faxes

(the "Group One faxes") did not contain opt-out notices as required by 47 U.S.C. § 227(b)(2)(D),

47 C.F.R. § 64.1200(a)(3)(iii), and GBL § 396-aa(2).  (*Id.* ¶¶ 14, 16.)  Plaintiff further alleges

that the remaining ten faxes (the "Group Two Faxes") contained opt-out notices that did not

satisfy the requirements of 47 U.S.C. § 227(b)(2)(D), 47 C.F.R. § 64.1200(a)(3)(iii), or GBL

§ 396-aa(2).  (*Id.* ¶¶ 15, 17-19.)  The opt-out notice on the Group Two faxes states:

---

[1] There are two different statutes codified as GBL § 396-aa, only one of which concerns unsolicited faxes.  It was added by an act of the New York Legislature on July 21, 1989.  This opinion only refers to that statute.

[2] Defendants contend that Alloy, Inc. ("Alloy") is not a proper party to this suit because the relevant statutes only impose liability on parties who "use any telephone facsimile machine," 47 U.S.C. § 227(b)(1)(C), and Plaintiff fails to allege that Alloy sent any of the challenged faxes.  (Memorandum in Support of Defendants' Combined Motion to Dismiss and to Strike ("Ds' Mem."), (Doc. 21), 2 n.1.)  Defendants do not seek to have Alloy dismissed from the Complaint at this time, but reserve their right to challenge the Complaint on that basis.  (*Id.*)

TO OPT-OUT OF FUTURE OFFERS, SIMPLY WRITE 'REMOVE' AND RETURN
THIS PAGE BY FAX TO 770.613.0222 OR CALL ME TOLL FREE AT
1.888.467.3784.  THANK YOU!

(*Id.* ¶ 15.)

Plaintiff seeks to represent three classes of individuals:  (A) persons in the United States

to whom Defendants sent unsolicited fax advertisements without proper opt-out notices or with

opt-out notices that failed to comply with the statutory language ("Class A"); (B) persons in the

United States to whom Defendants sent solicited fax advertisements without proper opt-out

notices or with opt-out notices that failed to comply with the statutory language ("Class B"); and

(C) persons in New York to whom Defendants sent unsolicited fax advertisements without

proper opt-out notices or with opt-out notices that failed to comply with the statutory language

("Class C").  (*Id.* ¶¶ 39-40.)

In the first two Causes of Action One in the Complaint, Plaintiff seeks statutory damages

of no less than $1,500,000 for the "thousands of violations" against Plaintiff and the putative

Class A and Class B members, as well as treble damages for each statutory violation if it is found

that Defendants acted "knowingly and willfully."  (*Id.* ¶¶ 59-61, 63-65.)  In the Third Cause of

Action, Plaintiff seeks injunctive relief under the TCPA.  (*Id.* ¶ 68.)  Finally, in the Fourth Cause

of Action, Plaintiff seeks statutory damages of no less than $300,000 for the unsolicited fax

advertisements sent to Plaintiff and the putative Class C members in violation of GBL § 396-aa.

(*Id.* ¶ 71.)

Defendant has moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant

to Fed. R. Civ. P. 12(b)(6), or in the alternative, to dismiss the Complaint's class action

allegations based on the unique language of Section 227(b)(3), which allegedly requires, in this

instance, compliance with New York Civil Practice Law and Rules ("CPLR") § 901(b), which in

3

turn prohibits class action claims for statutory violations.  Plaintiff opposes Defendants' motion and argues that Fed. R. Civ. P. 23 should govern whether the suit can proceed as a class action.

## II.    DISCUSSION

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

> ### B.  Consideration of Documents Outside the Pleadings

When deciding a motion to dismiss, the Court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in
> it by reference, (2) documents "integral" to the complaint and relied upon in it,
> even if not attached or incorporated by reference, (3) documents or information
> contained in defendant's motion papers if plaintiff has knowledge or possession
> of the material and relied on it in framing the complaint, (4) public disclosure
> documents required by law to be, and that have been, filed with the Securities and
> Exchange Commission, and (5) facts of which judicial notice may properly be
> taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation

marks omitted).  A document is considered "integral" to the complaint where the plaintiff has

"reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time*

*Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).  Such reliance "is a

necessary prerequisite to the court's consideration of the document on a dismissal motion; mere

notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)

(integral documents may include documents partially quoted in complaint or on which plaintiff

relied in drafting complaint).   If a document outside of the complaint is to form the basis for

dismissal, two requirements must be met in addition to the requirement that the document be

"integral" to the complaint:  (1) "it must be clear on the record that no dispute exists regarding

the authenticity or accuracy of the document"; and (2) "[i]t must also be clear that there exist no

material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at

134.

Plaintiff has attached the challenged faxes to the Complaint, and therefore these may be considered by the Court.  *See Cortec Indus,. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")  Plaintiff has also submitted via declaration the legislative history for GBL § 396-aa, various judicial opinions and orders, and a Federal Communications Commission ("FCC") amicus brief filed in connection with unrelated litigation.  I may take judicial notice of these materials – for the fact that they exist and for what is in them, but not for their truth – because they are public documents.  *See Sutton v. Wachovia Sec., LLC*, 208 F. App'x 27, 29-30 (2d Cir. 2006) (court orders are "undisputably matters of public record"); *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005) ("The Court may . . . take judicial notice of public documents, such as legislative histories.").

Additionally, Plaintiff has submitted a journal article of which I may take judicial notice for the fact of its publication, but not for the truth of the statements contained therein.  *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 175-76 (S.D.N.Y. 2006) ("Courts may . . . take judicial notice of . . . press articles, for the fact of their publication."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary

judgment.").  It does not appear, however, that the article is relevant apart from its truth, so I will disregard it.

    C. <u>Analysis</u>

       1. *Motion to Strike Class Allegations*

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain statutory exceptions apply.  47 U.S.C. § 227(b)(1)(C).  The TCPA provides that private parties "may, if otherwise permitted by the laws or rules of court of a State," bring an action for an injunction or money damages.  47 U.S.C. § 227(b)(3).[3]

Defendants contend that CPLR § 901(b) prevents the maintenance of Plaintiff's TCPA claim as a class action because the "may, if otherwise permitted" language requires this Court to apply state law.  CPLR § 901(b) provides:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

Because the TCPA is a penalty-imposing statute that does not explicitly authorize class action recovery, Defendants assert that Plaintiff cannot maintain a class action.

The Second Circuit has previously agreed with Defendants' contention.  *See Giovanniello v. ALM Media, LLC*, 660 F.3d 587 (2d Cir. 2011), *vacated*, 133 S. Ct. 159 (2012); *Holster v. Gatco, Inc.*, 618 F.3d 214 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2151 (2011); *Bonime v. Avaya, Inc.*, 547 F.3d 497 (2d Cir. 2008), *abrogated in part by Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).  The *Giovanniello* court, relying on *Holster* and *Bonime*,

---

[3] While the statute says the action may be brought "in an appropriate court of that state," 47 U.S.C. § 227(b)(3), it may also be brought in federal court, *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012).

held that the TCPA's "may, if otherwise permitted" provision mandates that "a TCPA claim cannot be brought if not permitted by state law." *Giovanniello*, 660 F.3d at 591-92 (internal quotations omitted). Accordingly, the court concluded that the Connecticut state statute of limitations, rather than the federal catch-all statute of limitations (28 U.S.C. § 1658(a)), should determine what claims in the plaintiff's TCPA action could be heard in federal court. *Giovanniello*, 660 F.3d at 593. Defendants argue, based on *Giovanniello*, that CPLR § 901(b) would likewise have to be applied, precluding a class action.

Plaintiff argues that *Giovanniello* is no longer good law in light of the Supreme Court's decisions in *Mims* and *Shady Grove*, which dictate that Fed. R. Civ. P. 23 alone controls whether its claim may be brought as a class action.[4] Indeed, Plaintiff has directed the Court to several recent district court decisions outside the Second Circuit that have considered *Giovanniello* and concluded that Fed. R. Civ. P. 23, rather than state laws, must be applied in making class action determinations in private TCPA actions brought in federal court. *See Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.*, No. 09-CV-43, 2012 WL 6554221, at *3 (D.N.J. Dec. 14, 2012) (holding that Section 227(b)(3) does not require a court to forego the application of Fed. R. Civ. P. 23 by instead applying state class action law); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-CV-11, 2012 WL 4903269, at *7 (D.N.J. Oct. 17, 2012) (holding that in light of *Mims* and *Shady Grove* the TCPA should not be interpreted as requiring a federal court

---

[4] In *Mims*, the issue for the Supreme Court was whether Section 227(b)(3)'s "may, if otherwise permitted" language indicated a Congressional desire to create a private right of action enforced exclusively in state courts. *Mims*, 132 S. Ct. at 744. The Supreme Court unanimously rejected that argument and held that federal and state courts have concurrent jurisdiction over TCPA claims. *Id.* at 745.

In *Shady Grove*, Plaintiff had filed a class action in federal court based on a New York state law claim. *Shady Grove*, 130 S. Ct. at 1436-37. The district court dismissed the case, reasoning that New York civil procedure prohibited class actions for statutory penalty claims where the statute failed to specifically authorize class action recovery. *Id.* at 1437. The Supreme Court held that Rule 23 generally applies even where a federal court is sitting in diversity on a state law claim. *See id.* at 1438, 1442.

to follow state law); *Bank v. Spark Energy Holdings, LLC*, No. 11-CV-4082, 2012 WL 4097749, at *2-3 (S.D. Tex. Sept. 13, 2012) (finding *Mims* to preclude application of Section 901(b) to TCPA claim); *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-CV-10010, 2012 WL 3205526, at *4 (E.D. Mich. July 26, 2012) (using *Mims* holding as basis for finding Michigan state law prohibiting class actions did not apply to TCPA claim); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-CV-1162, 2012 WL 3027953, at *2 (W.D. Mich. July 24, 2012) (finding *Shady Grove* and *Mims* controlled in ruling that a Michigan law barring class actions did not apply to TCPA claim); *Hawk Valley, Inc., v. Taylor*, No. 10-CV-804, 2012 WL 1079965, at *10 (E.D. Pa. Mar. 30, 2012) (citing *Mims* in rejecting argument that state statute of limitations applied to TCPA claim).

Although "[t]he general rule is that a federal district court is bound by the rule of the circuit, . . . [a] district court . . . should not rely on older precedents that have been rejected in later decisions." *Ore & Chem. Corp. v. Stinnes Interoil, Inc.*, 606 F. Supp. 1510, 1512 (S.D.N.Y. 1985). On October 1, 2012, the Supreme Court vacated *Giovanniello* and remanded the case back to the Second Circuit "for further consideration in light of *Mims*." *Giovanniello*, 133 S. Ct. 159. Based on the reasoning contained in the cases cited above, I am persuaded that the Second Circuit will likely depart from its prior decision in *Giovanniello* and conclude that *Mims* and *Shady Grove* support the contention that the TCPA should not be interpreted as requiring a federal court to follow state law.

Accordingly, Defendants' Motion to Strike the Class Allegations is denied without prejudice to renewal, if appropriate, following the Second Circuit's decision in *Giovanniello*.

2.   *Motion to Dismiss for Failure to State a Claim*

Defendants put forth several arguments to support their contention that Plaintiff's claim should be dismissed for failure to state a claim.  First, Defendants argue that the majority of Plaintiff's claims are time-barred under the applicable New York statute of limitations.  Second, Defendants contend that the challenged faxes are not advertisements as defined by either the TCPA or GBL § 396-aa.  Third, Defendants assert that Plaintiff may not properly bring a claim based on the failure to include an opt-out notice, as the TCPA does not create a private right of action for technical violations.  Finally, Defendants contend that even if the TCPA did create a private right of action for technical violations, the Group Two faxes substantially comply with the statutory requirements.

a.   <u>Statute of Limitations</u>

Defendants contend that the claims arising from all but one of the faxes at issue are barred by the statute of limitations.  Because neither the TCPA nor GBL § 396-aa contain a statute of limitations, Defendants, citing *Giovanniello*, urge the Court to borrow the most closely analogous state limitations period, which they assert is the one-year period of CPLR § 215(3).  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex. rel. Wilson*, 545 U.S. 409, 414 (2005) ("To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period.  If it does not, we generally 'borrow' the most closely analogous state limitations period.").

Plaintiff responds that actions under the TCPA are governed by 28 U.S.C. § 1658(a), which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of [28 U.S.C. § 1658]" has a four-year statute of limitations.  Thus, unless otherwise specified, a cause of action created by a federal statute

10

enacted after December 1, 1990[5] has a four-year statute of limitations.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (favoring broad interpretation of Section 1658 to avoid "uncertainty inherent in the practice of borrowing state statutes of limitation").

As stated above, in *Giovanniello*, the Second Circuit held that the TCPA's "may, if otherwise permitted" language required the court to look to the applicable state statute of limitations to determine if the plaintiff's TCPA claims could proceed in federal court.  *See Giovanniello*, 660 F.3d at 593.  Because I am persuaded that the Second Circuit will likely not apply its now-vacated *Giovanniello* decision on remand, I conclude that 28 U.S.C. § 1658(a), rather than the most analogous state statute of limitations, should apply to the faxes at issue in Plaintiff's claims.  Moreover, as it is uncertain what the most closely analogous state statute of limitations is, I find it appropriate to apply Section 1658(a) to Plaintiff's claims.  *See, e.g.*, *Benedia v. Super Fair Cellular, Inc.*, No. 07-CV-01390, 2007 WL 2903175, at *2 (N.D. Ill. Sept. 26, 2007) (concerns as to uncertainty support applying Section 1658(a)); *Stern v. Bluestone*, 850 N.Y.S.2d 90, 96 (1st Dep't 2008) (same), *rev'd on other grounds*, 12 N.Y.3d 873 (2009); *Zelma v. Konikow*, 879 A.2d 1185, 1189-90 (N.J. Super. Ct. App. Div. 2005) (same).

Plaintiff alleges at least eighteen specific instances between February 19, 2008 and February 16, 2011 when Defendants sent unsolicited fax advertisements to Plaintiff, as well as several unspecified instances thereafter.  Plaintiff filed its Complaint on January 24, 2012, (Doc. 1), less than four years after the first fax was sent.  Thus, all of Plaintiff's claims arising from the faxes at issue are within the applicable time period.

---

[5] The TCPA was enacted in 1991.  *See Moltz v. Firstsource Advantage, LLC*, No. 08-CV-239S, 2011 WL 3360010, at *5 (W.D.N.Y. Aug. 3, 2011).

Accordingly, Defendants' Motion to Dismiss Plaintiff's allegations based on the contention that they fall outside the applicable statute of limitations is denied without prejudice to renewal, if appropriate, following the Second Circuit's decision in *Giovanniello*.

        b.   The Faxes Are "Advertisements" Under the TCPA But Not the GBL

             i.   TCPA

The TCPA prohibits the sending of "an unsolicited advertisement" to a fax machine, unless certain statutory exceptions apply.  47 U.S.C. § 227(b)(1)(C).  The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  *Id.* § 227(a)(5).

The faxes at issue here inform the recipient of Channel One's services, including free equipment and installation, as well as various accolades the network has received.  (Compl. Ex. A, at BY-000044.)  Several faxes also provide information about the location of a Channel One booth at national conferences for educators and administrators and attempt to entice individuals to the booth in exchange for free gifts.  (*Id.* at BY-00042.)

Defendants contend that the challenged faxes were not "advertisements" within the meaning of the TCPA because they offered free products and services, and thus cannot be considered "material advertising the *commercial* availability" of a product.  (D's Mem. 11-12.) Plaintiff responds that the challenged faxes explicitly advertise Channel One's programming and video services, and that schools provide valuable consideration to Defendants.  Plaintiff further alleges that even if the faxes were offering free goods or services, they would still be considered advertisements under the TCPA.

12

"[I]n resolving the matter of whether the faxes at issue constitute advertising it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the [FCC], which . . . is the agency responsible for administering the statute, through notice-and-comment rule-making or formal agency adjudication." *Holmes v. Back Doctors, Ltd. ("Holmes I")*, No. 09-CV-540, 2009 WL 3425961, at *2 (S.D. Ill. Oct. 21, 2009) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001)).

The FCC has noted that faxes containing only "information, such as industry news articles, legislative updates, or employee benefit information" are not prohibited by the TCPA. *Rules and Regulations Implementing the TCPA*, 21 F.C.C. Rcd. 3787, 3814 (2006). Furthermore, incidental advertising information in such a newsletter "would not convert the entire communication into an advertisement." *Id.* Accordingly, if the newsletter's primary purpose is informational, rather than to promote commercial products, it does not constitute an unsolicited advertisement. Factors relevant to determining whether a fax is bona fide informational communication rather than an advertisement include: "whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.*, to paid subscribers or to recipients who have initiated membership in the organization that sends the communication." *Rules and Regulations Implementing the TCPA*, 71 Fed. Reg. 25967, 25973 (May 3, 2006). Additional relevant factors are: "the amount of space devoted to advertising versus the amount of space used for information or 'transactional' messages . . . and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming

13

conference, or whether the advertising space is sold to and transmitted on behalf of entities other

than the sender."  *Id.*

> But the FCC deems faxes that "promote goods or services even at no cost, such as free

magazine subscriptions, catalogs, or free consultations or seminars" to be advertisements under

the TCPA:

> In many instances, 'free' seminars serve as a pretext to advertise commercial products
> and services.  Similarly, 'free' publications are often part of an overall marketing
> campaign to sell property, goods, or services.  For instance, while the publication itself
> may be offered at no cost to the facsimile recipient, the products promoted within the
> publication are often commercially available.  Based on this, it is reasonable to presume
> that such messages describe the 'quality of any property, goods, or services.'  Therefore,
> facsimile communications regarding such free goods and services . . . would require the
> sender to obtain the recipient's permission beforehand . . . .

21 F.C.C. Rcd. at 3814 (footnote omitted) (quoting 47 U.S.C. § 227(a)(4)).

> An examination of the relevant factors enumerated by the FCC leads me to conclude that

the faxes at issue in this case constitute advertising.  Defendants' faxes are "indiscriminate, open-

ended invitations" to sign up for its products.  *Cf. Phillips Randolph Enters. v. Adler-Weiner

Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) ("[U]nlike an advertisement,

the fax is not an indiscriminate, open-ended invitation.  Instead, the fax makes clear individuals

interested in participating in the research study must be qualified and are pre-screened.").  The

faxes seek subscribers to what is plainly a commercial product – indeed, it literally consists in

part of commercials – and the fact that the recipient of the fax is not the one paying for the

product does not make the proposed transaction non-commercial.  Further, given that two

minutes of each day of Channel One's content consists of sponsored advertisements, the offer of

"free" content is plainly a vehicle to "advertise [the sponsor's] commercial products and

services," and "sell [the sponsor's] property, goods, or services."  It is eminently plausible that

Defendants' ultimate goal is to deliver viewers to its various sponsors, who offer commercially available products.

Furthermore, the faxes at issue do not resemble the kinds of faxes that have been deemed merely informational. *See Holmes I*, 2009 WL 3425961, at *4 (faxes did not constitute advertisements where they contained "bona fide medical information of interest to personal injury lawyers," defendants issued faxes on bi-monthly schedule, text changed from issue to issue, and faxes were "directed to specific regular recipients, specifically, personal injury law firms"); *Stern v. Bluestone*, 12 N.Y.3d 873, 876 (faxes were not advertisements where they merely furnished information about attorney malpractice lawsuits, substantive content varied from issue to issue, and faxes did not promote commercial products). First, the faxes contain no information about anything other than Defendants' service. Second, although the faxes seem to be directed only to schools, the information (such as it is) is not of special interest to a particular kind of school, it does not appear that the faxes are issued on a particular schedule (*e.g.*, bi-monthly), nor does the text materially change from one fax to another. Accordingly, Defendants' faxes are "fax advertisements" as defined in Section 227(a)(5).

ii. GBL

Defendants further contend that because their faxes do not "promot[e] goods or services for purchase," they do not violate GBL § 396-aa, which provides that "[i]t shall be unlawful . . . to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages." N.Y. Gen. Bus. Law. § 396-aa(1). Plaintiff argues that parties provide valuable consideration to Defendants for their services, such as access to schools, access to students, and transmission of Defendants' two-minutes of sponsored commercials.

15

"Purchase" is defined as "the act or an instance of buying."  Black's Law Dictionary 1270 (8th ed. 1999); *see also* Webster's Third New Int'l Dictionary 1844 (2002) (defining purchase as "to obtain by paying money or its equivalent").  Unlike the TCPA, which prohibits unsolicited fax advertisements promoting the "commercial availability or quality of any property, goods, or services," and does not contain a requirement that the fax promote a purchase, the New York State legislature apparently did not intend to prohibit the transmission of fax advertisements offering free goods or services.  Section 396-aa thus would not appear to cover the offer of free television content.

Furthermore, even if, as Plaintiff alleges, Defendants' faxes were merely a pretext or part of an overall marketing plan to advertise its commercial sponsors' goods and services, (P's Mem. 32),[6] and thus the faxes themselves could be construed as promoting a purchase, Section 396-aa requires that the fax promote goods or services for purchase *by the recipient*.  *See* N.Y. Gen. Bus. Law § 396-aa (emphasis added).  Plaintiff does not assert that the schools or school administrators who receive the faxes are the targets of the sponsors' advertisements, or would be purchasing anything.  Rather, if Defendants' service were permitted in the school, it would be the students who would be targeted by the sponsors' commercials.  Accordingly, because the faxes do not propose a purchase of its service or even a purchase of its sponsors' products by the recipient of the faxes, they do not violate the terms of Section 396-aa.

In sum, Defendants' faxes constitute advertisements within the meaning of the TCPA, but do not promote goods or services for purchase within the meaning of GBL § 396-aa.

---

[6] "P's Mem." refers to Plaintiff's Revised Memorandum of Law in Opposition to Defendants' Motion to Strike and Dismiss (Doc. 23).

Accordingly, Defendants' Motion to Dismiss is granted only as to Plaintiff's state law claims, and the Fourth Cause of Action in the Complaint is dismissed.[7]

### c.   Opt-Out Clause Violations of Unsolicited Faxes

Defendants contend that even if the faxes were unsolicited advertisements within the meaning of the TCPA, the Court should dismiss the first three Causes of Action in the Complaint to the extent they seek relief based on Defendants' alleged failure to include an opt-out notice. Defendants argue that Section 227(d), which makes it unlawful to initiate a fax communication that does not comply with the technical or procedural standards of the TCPA – such as the inclusion of the opt-out notice – does not create a private right of action.  Defendants contend that under Section 227(d), state and federal officials are the only entities with the discretion to allege claims based on the TCPA's technical requirements.  Plaintiff contends that pursuant to Section 227(b)(1)(C)(iii), if a fax advertisement does not satisfy the TCPA's opt-out notice requirements, there is no defense to liability.

"[P]rivate rights of action to enforce federal law must be created by Congress," and unless legislative intent to create a private right of action exists, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  Whether a statute creates a cause of action, either expressly or by implication, is a matter of statutory construction.  *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979).  Thus, to interpret the TCPA, a court must begin with the statutory language, and if the statutory language is clear, a court simply gives effect to the language.  *See Smith v. United States*, 508 U.S. 223, 228-30

---

[7] I decline to grant leave to amend the GBL claim *sua sponte*.  Leave to amend should be denied as futile where the problem with the claim is substantive and better pleading would not cure it.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

(1993); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).  If the language is not conclusive, a court determining if a federal statute creates a private right of action may consider whether:  (1) the plaintiff falls within the class the statute was enacted to benefit; (2) there is evidence of any legislative intent to create or to deny a private right of action; (3) a private right of action is consistent with the purposes of the legislative scheme; and (4) the area of law is one traditionally relegated to state law.  *See Cort v. Ash*, 422 U.S. 66, 78 (1975); *Lindsay v. Ass'n of Professional Flight Attendants*, 581 F.3d 47, 52-53 & n.3 (2d Cir. 2009).

It is a violation of the TCPA to send an unsolicited fax advertisement, "unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)." 47 U.S.C. § 227(b)(1)(C)(iii).  Section 227(b)(2)(D) in turn sets forth the requirements for an acceptable opt-out notice.  That section dictates the placement of the notice, sets forth several statements the notice must include, and requires that the notice also comply with the requirements of subparagraph 227(b)(2)(E) and subsection 227(d).  *See* 47 U.S.C. § 227(b)(2)(D).  It is undisputed that Section 227(b) creates a private right of action.  47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State [an action for an injunction or monetary damages]."); *see Adler v. Vision Lab Telecomms., Inc.*, 393 F. Supp. 2d 35, 38 (D.D.C. 2005) ("The private right of action established by § 227(b)(3) limits the right to 'an action based on a violation of this subsection [*i.e.*, subsection (b)] or the regulations prescribed under this subsection.'") (alteration in original) (emphasis omitted) (quoting 47 U.S.C. § 227(b)(3)); *see also Nack v. Walburg*, No. 10-CV-478, 2011 WL 310249, at *4 (E.D. Mo. Jan. 28, 2011) ("[I]f an opt-out notice is required by the regulation, Plaintiff has a right to bring a cause of action under the TCPA, alleging that Defendant violated this regulation by not including an opt-out

notice on a fax advertisement. . . .").  Section 227(b) thus plainly allows a private right of action

where a fax is sent without a notice that meets its requirements.

Defendants point to the decision of the district court of the Southern District of Illinois in

*Holmes v. Back Doctors, Ltd. ("Holmes II")*, 695 F. Supp. 2d 843, 853-55 (S.D. Ill. 2010), to

support their contention that there is no private right of action for violations of Section 227(d).

*Holmes*, however, is inapposite because there the issue was whether the defendant's faxes

complied with 47 U.S.C. § 227(d) and 47 C.F.R. § 68.318, a regulation issued pursuant to a

directive in Section 227(d), and which required the sender to mark

> in a margin at the top or bottom of each transmitted page of the message or on the first
> page . . . the date and time it is sent and an identification of the business . . . sending the
> message and the telephone number of the sending machine . . . .

47 U.S.C. § 227(d)(1)(B).  The court found that neither 47 U.S.C. § 227(d) nor 47 C.F.R.

§ 68.318 afforded the plaintiff a private right of action.  *Holmes II*, 695 F. Supp. 2d at 854

("Plainly Congress knew how to create a private right of action under the TCPA, and the fact that

it did so as to subsection (b) and subsection (c) but not subsection (d) of 47 U.S.C. § 227

manifests a legislative intent not to create a private right of action under subsection (d) of the

statute.").  *Holmes II* did not address a requirement like the one at issue here, which originates in

Section 227(b).

In this case Plaintiff is plainly asserting a violation of Section 227(b)(1)(C)(iii) – *i.e.*, that

it received unsolicited fax advertisements that did not contain an opt-out notice meeting the

requirements under Section 227(b)(2)(D).  (Compl. ¶ 17.)  The fact that Section 227(b)(2)(D)

incorporates certain additional requirements contained in Section 227(d) does not make

Plaintiff's claim one asserted under subsection (d).  And, in any event, the respects in which

Plaintiff alleges that Defendants' notice falls short are all set forth in Section 227(b), not Section 227(d).

Accordingly, Defendants' Motion to Dismiss the first three Causes of Action in the Complaint to the extent they seek relief based on Defendants' alleged failure to include an opt-out notice is denied.

### d.   Opt-Out Clause Violations of Solicited Faxes

Defendants further contend that the Court should dismiss the second and third Causes of Action to the extent they seek relief based on inadequate opt-out notices in solicited faxes, as other courts have held that an opt-out notice is not required when a fax was sent after express approval of the recipient.  Plaintiffs contend that the same opt-out notice required for unsolicited fax advertisements is required for those that parties give their consent to receive.

Under the TCPA, the FCC is charged with prescribing regulations to implement the TCPA's requirements, *see* 47 U.S.C. § 227(b)(2), and parties may sue for violations of the statute "or the regulations prescribed" thereunder, *id.* § 227(b)(3).  Pursuant to Section 227(b), the FCC promulgated a regulation requiring that "[a] facsimile advertisement that is sent to a recipient *that has provided prior express invitation or permission to the sender* must include an opt-out notice. . . ."  47 C.F.R. § 64.1200(a)(3)(iv) (emphasis added).  Plaintiff contends that this regulation requires an opt-out notice on faxes sent with the recipient's express permission.  (P's Mem. 20.)  Defendants, however, argue that Section 64.1200(a)(3)(iv) applies only to unsolicited advertisements and to find otherwise would lead to unjust results.  (Ds' Mem. 16.)

In *Nack*, although the court recognized that the text of the FCC's 2006 Rulemaking Order made clear that "the opt-out notice requirement is not expressly limited to unsolicited faxes," it nonetheless held that Section 64.1200(a)(3)(iv) does not apply where the fax advertisement is

sent "pursuant to the recipient's express and specific permission." *Nack*, 2011 WL 310249, at

*5. In so holding, the court distinguished between a situation in which an opt-out notice is

missing from a particular fax for which express permission was given and one in which

permission was given to a sender at some previous point in time and faxes sent thereafter, in

reliance on the earlier permission, do not include an opt-out notice. *Id.* The court surmised that

only in the former situation would a fax be considered "solicited," and thus not require an opt-

out notice. *See id.* It thus granted summary judgment in a case where the only fax at issue was

one for which express permission had been given. *See id.* at *6.

    While the distinction is not unreasonable, on its face Section 64.1200(a)(3)(iv) appears to

require even solicited faxes to contain an opt-out notice. *See* 47 C.F.R. § 64.1200(a)(3)(iv);

*Clearbrook v. Rooflifters, LLC*, No. 08-CV-3276, 2010 WL 2635781, at *4 (N.D. Ill. Jun. 28,

2010). Moreover, the FCC has explicitly stated that "the plain language of 47 C.F.R.

§ 64.1200(a)(3)(iv) requires facsimile advertisements sent with the recipient's consent to contain

an opt-out notice." Amicus Brief for the Federal Communications Commission Urging Reversal

at 10-11, *Nack v. Walburg*, No. 11-1460 (8th Cir. Feb. 24, 2012), 2012 WL 725733. Such a

reading "advances the consumer protection policies underlying the TCPA." *Id.* at 11.

Furthermore, this reading comports with the notion that fax recipients may change their minds

about various products or services every day, and therefore should be provided with an

opportunity to withdraw their prior consent.[8] Accordingly, Defendant's Motion to Dismiss

---

[8] Moreover, the distinction drawn by the *Nack* court – seemingly allowing a single fax sent with permission to lack an opt-out notice, but none thereafter – may not be workable, given the ambiguity that may attend conversations regarding permission and the impracticability of expecting plaintiffs (or defendants, for that matter) to keep track of whether a particular fax is or is not the first. A bright line rule such as the FCC has promulgated seems more practical.

Plaintiff's allegations to the extent they seek relief for solicited fax advertisements that do not contain a proper opt-out notice is denied.

e.   Substantial Compliance with the TCPA

Finally, Defendants contend that the Court should dismiss the Second and Third Causes of Action to the extent they seek relief based on inadequate opt-out notices because the opt-out notices on the Group Two Faxes substantially complied with the TCPA's provisions.

Plaintiff alleges that Defendants' faxes fail to satisfy 47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. § 64.1200(a)(3)(iii), which set forth the specific items that an opt-out notice must contain. Specifically, Plaintiff alleges that Defendants' faxes lack a statement that response to an opt-out request must be made within 30 days, *see* 47 C.F.R. § 64.1200(a)(3)(iv), and do not explain that: (1) an opt-out request under the TCPA must identify the telephone number or numbers of the telephone facsimile machine or machines to which the request relates; and (2) the request will be ineffective if, subsequent to an opt-out request, the person making the request provides express invitation or permission to the sender, in writing or otherwise, to send advertising faxes to the maker of the opt-out request at the number or numbers of the telephone facsimile machine or machines to which the opt-out request relates, *see* 47 U.S.C. § 227(b)(2)(E); 47 C.F.R. §64.1200(a)(3)(iii)(A)-(D)(v).  Defendants concede that the opt-out notices do not contain all the information required by the TCPA, but argue that substantial compliance with the TCPA's opt-out requirements is a valid defense.  (Ds' Mem. 17.)

Defendants cite *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-CV-481, 2009 WL 602019, at *4-5 (W.D. Wis. Mar. 9, 2009), to support their contention, but their reliance is misplaced.  In *Landsman*, Defendant's opt-out notice stated, among other things, that "[f]ailure

to comply within a reasonable time with a request to opt-out would be unlawful."[9]  *Id.* at *2.  The

plaintiff argued that the notice failed to satisfy 47 C.F.R. § 64.1200(a)(3)(iv) because it failed to

state explicitly that failure to comply with an opt-out request within 30 days is unlawful, as

stated in Section 64.1200(a)(3)(iii)(B).  *Id.* at *4.  Relying on an FCC statement that rules

regarding the exact wording of the opt-out notice may interfere with a sender's ability to design

notices, the court found that the defendant's decision to use the phrase "reasonable time" as

opposed to "not to exceed 30 days" substantially complied with the TCPA.  *See id.* at *6.

     In contrast, what Plaintiff is alleging in this case is not an issue of semantics.  Rather,

Plaintiff alleges that Defendants failed to:  (1) include a statement that if the recipient requests to

opt-out, failure to comply within 30 days is unlawful; or (2) explain that a request to opt-out

complies with the TCPA only if (a) it identifies the telephone number of the fax machine to

which the request relates; and (b) the person making the request does not, after the initial opt-out

request, provide express permission for the sender to send fax advertisements.  (Compl. ¶¶ 17-

18.)  By not including this information in its opt-out notice, Defendants failed to satisfy the terms

of Section 227(b)(2)(D) and Section 64.1200(a)(3)(iii).  *See Response Card Mktg., Inc.*, 27

F.C.C. Rcd. 3895, 3898 (2012) (sender failed to comply with opt-out requirement where notice

did not contain statement that failure to comply with request within 30 days was unlawful and

did not include the specifications set out in Section 64.1200(a)(3)(v)).  Unlike *Landsman*, where

the defendant conveyed the essence of the required information, Defendants here are alleged not

---

[9] The opt-out notice stated in full:

You may ask us not to send future advertisements to you by emailing us at customerlist@lorman.com, calling us at (877) 659–2233, or faxing your request to (715) 833–3953.  Please follow the instructions provided to opt-out from receiving future faxes.  For us to be able to honor this request, you must include the name of the person (or persons) and fax number (or numbers) you wish to opt-out.  Failure to comply within a reasonable time with a request to opt-out would be unlawful.

*Landsman*, 2009 WL 602019, at *2.

to have addressed these prescribed issues *at all*.

Accordingly, Defendants' Motion to Dismiss the Second and Third Causes of Action to the extent they are based on allegations that the opt-out notices failed to comply with the TCPA is denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The state law claim (Cause of Action Four) is dismissed, and the federal claims (Causes of Action One, Two, and Three) will go forward.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Doc. 20.)  The parties are to appear for a status conference on **April 17, 2013** at **10:00 a.m.**

**SO ORDERED.**

DATED:        March 28, 2013
              White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.